UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

|  |  |
|---|---|
| MICHELE TOURANGEAU, | |
| Plaintiff, | |
| vs. | Civil No. 20-00012-JAW |
| NAPPI DISTRIBUTORS, | |
| Defendant. | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, WITH INCORPORATED MEMORANDUM OF LAW

Defendant Nappi Distributors ("Nappi") has appropriately paid its current employee – Plaintiff Michele Tourangeau – for the work she has performed. Any decisions made by Nappi that pertain to Ms. Tourangeau were based on legitimate business considerations. Nappi has not treated Ms. Tourangeau differently from similarly-situated men on the basis of her sex or her pregnancy. Finally, Nappi has not retaliated against Ms. Tourangeau for any activities that are protected under the Federal Equal Pay Act. Pursuant to Federal Rule of Civil Procedure 56 and Local Rules 7 and 56, Nappi requests summary judgment on all claims.

### BACKGROUND

### I.    FACTS

The factual background for the Motion is set forth in the accompanying Statement of Material Facts, which is hereby incorporated by reference. Fed. R. Civ. P. 10(c).

### II.    PROCEDURAL POSTURE

The Plaintiff commenced this action by a Complaint filed on January 10, 2020. The Complaint contains the following claims: Violation of the Federal Equal Pay Act ("EPA") (Count I); Retaliation in Violation of the EPA (Count II); Violation of the Pregnancy Discrimination Act (Count III); Sex-Based Discrimination in violation of Title VII  (Count IV); Quid Pro Quo Sexual Harassment in Violation of Title VII (Count V); Violation of the Maine Human Rights Act (Count VI); Violation of the Maine Timely and Full Payment of Wages Law (Count VII);

Quantum Meruit (Count VIII); and Unjust Enrichment (Count IX). Defendant filed an Answer denying the Complaint's material allegations and asserting affirmative defenses.

## SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56, the Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The rule affords the Court an opportunity "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990) (citation omitted). "In practice, [the] rule acts as a firewall to contain the blaze of cases that are so lacking in either factual foundation or legal merit that trial would be a useless exercise." *Conward v. Cambridge Sch. Comm.*, 171 F.3d 12, 18 (1st Cir. 1999) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991)).

In response to a properly supported summary judgment motion, the nonmovant must present "definite, competent evidence" to rebut issues upon which he or she bears the ultimate burden of proof. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986) and *Garside*, 895 F.2d at 48). The United States Court of Appeals for the First Circuit has emphasized that "[t]his evidence 'cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial.'" *Id.* (citing *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 181 (1st Cir. 1989) and *Anderson*, 477 U.S. at 249-50 (evidence that "is merely colorable or is not significantly probative" cannot deter summary judgment)).

## ARGUMENT

### I.   TO THE EXTENT THE PLAINTIFF'S CLAIMS UNDER THE FEDERAL EQUAL PAY ACT ARE NOT TIME BARRED, NAPPI DID NOT VIOLATE THE PLAINTIFF'S RIGHTS UNDER THAT ACT.

The federal Equal Pay Act ("EPA") prohibits wage discrimination "between employees on the basis of sex . . . for equal work on jobs the performance of which requires equal skill, effort,

and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). To prove an EPA violation, a plaintiff must show "that the employer paid different wages to an employee of the opposite sex for substantially equal work." *Ingram v. Brink's, Inc.*, 414 F.3d 222, 232 (1st Cir. 2005) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)). If a plaintiff meets that proof, the burden shifts to the employer to establish that the wage discrepancy resulted from a factor other than sex, including: one, a seniority system; two, a merit system; three, a system which measures earnings by quantity or quality of production; or four, a differential based on any other factor other than sex. *See Corning Glass Works*, 417 U.S. at 196 (citing 29 U.S.C. § 206(d)(1)). "Acceptable factors 'other than sex' include experience, prior salary, education, skills which the employer deems useful to the position, and a proven ability to generate higher revenues for the employer's business." *Scott v. Sulzer Carbomedics, Inc.*, 141 F. Supp. 2d 154, 176 (D. Mass. 2001). Any of the four statutory exceptions is a complete defense to conduct that would otherwise violate the statute. 29 U.S.C. § 206(d)(1).

### A. To the extent the Plaintiff's Equal Pay Act claim is based on alleged non-willful violations that occurred before January 10, 2018 and alleged willful violations that occurred before January 10, 2017, the claim is time barred.

Most claims under the EPA are subject to a two-year statute of limitations. 29 U.S.C. § 255(a). However, claims for willful violations of the EPA are subject to a three-year limitation period. *Id*. A violation of the EPA is considered "willful" if the affected employee can demonstrate "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Both the United States Supreme Court and the United States Court of Appeals for the First Circuit have emphasized that "an employer does not act willfully even if it acts unreasonably in determining whether it is in compliance with the FLSA." *Baystate Alt. Staffing v. Herman*, 163 F.3d 668, 681 (1st Cir. 1998); *see also McLaughlin*, 486 U.S. at 135 n.13 ("If an employer acts unreasonably, but not recklessly, in determining its legal obligation, then, although its action would be considered willful under petitioner's test, it should not be so considered under *Thurston* or the identical standard we approve today."); *LeGoff v. Trs. of Bos.*

*Univ.*, 23 F. Supp. 2d 120, 125 (D. Mass. 1998) (noting that "[t]he EPA incorporates the statute of limitations of the Fair Labor Standards Act (FLSA)").

Ms. Tourangeau appears to premise her EPA claim on the allegation that Nappi eliminated her salary without increasing her commission rate to three percent. While the Plaintiff makes conclusory assertions in her Complaint about alleged willful EPA violations by Nappi, the Plaintiff has not alleged any facts to demonstrate a knowing violation or a violation resulting from reckless disregard. Therefore, to the extent her EPA claim is based on other alleged conduct by Nappi that occurred before January 10, 2018 – which is two years prior to the date she filed the Complaint in this matter – it is time barred.[1] Even if the Plaintiff could generate a genuine issue of material fact on the issue of willfulness, her EPA claim is barred to the extent it is based on other alleged conduct by Nappi that occurred before January 10, 2017.

### B. The record evidence does not support an EPA claim with regard to the Plaintiff's allegation that she was compensated less than her male counterparts.

Ms. Tourangeau appears to premise her EPA claim on the allegation that Nappi eliminated her salary without increasing her commission rate to three percent. Based on the record evidence, Plaintiff cannot meet the admittedly lenient standard for establishing a *prima facie* case. First, the allegation is based on an inaccurate premise. To date, Nappi has not eliminated the Plaintiff's base salary – it has merely reduced it from a weekly payment of $432.52 to a weekly payment of $370.02. Moreover, the current plan is for Nappi to reduce her base salary by half over a three-year period and reassess the need for the salary as time progresses. Second, all wine sales representatives that have been newly hired since 2014 to handle southern Maine sales routes – regardless of their sex – are receiving a two percent commission and (other than the Plaintiff) do not typically receive any base salary. Therefore, even if the Plaintiff's salary were eventually eliminated, she would be compensated the same as

---

[1] For example, if the Plaintiff is basing her EPA claim on the allegation that she was not properly compensated when she was out on maternity leave in 2016, her claim in that regard is time barred. *See generally infra* Argument III (discussing the background of the Plaintiff's maternity leave in 2016).

her male counterparts that were newly hired since 2014. Third, as the compensation data submitted as part of Nappi's Statement of Material Facts reflects, the Plaintiff has been paid more than some of Nappi's male wine sales representatives. *See* Fox Aff. Exh. A (representatives "E" and "G"); Exh. B (representatives "E" and "G"); Exh. C (representatives "E," "G," "C," "A" and "O"); Exh. D (representatives "G," "C," "A" and "O"); Exh. E (representatives "M," "L," "N," "C," "A" and "O"); Exh. F (representatives "L," "N," "T," "M," "C" and "H"). Therefore, both in terms of commission rate and in terms of total numbers, the Plaintiff has been compensated at least as well – if not better – than some of her male counterparts.

However, even if the Court assumes that the Plaintiff can present a *prima facie* case, any distinctions in compensation structures between the Plaintiff and some of her male counterparts are based on factors other than sex. While it is true that wine sales representatives hired before 2014 received three percent commissions, that commission rate was set many years ago, long before Nappi had to make investments in its operations and had incurred additional overhead. In 2013 and 2014, that rate was eating into Nappi's profits to such an extent that Nappi management concluded that it could not continue. In about that time period, Nappi decided to use a two percent commission rate for all new hires for wine sales representative positions. Notably, before the Plaintiff ever applied for a job at Nappi, Nappi President Frank Nappi, Jr. made it clear to the then Wine Sales Director Paul Carr that he could no longer offer jobs to prospective wine sales representatives with a three percent commission rate. Nappi decided to keep the three percent commission rate for those wine sales persons who were already at that rate due to their tenure with the company – some of whom had been working at Nappi for over thirty years – their experience running wine sales routes, and the fact that many of the representatives had developed their Nappi sale routes over many years. However, it was expressly decided that new hires would receive a two percent commission.

Since the Plaintiff's hiring, none of the new wine sales representatives Nappi has hired have received anything other than a two percent commission rate. This is true for all the men and women who have been newly hired since 2014. Moreover, with one exception, none of the

persons hired to handle a wine sales route in southern Maine since 2014 have received permanent base salaries.[2] The only exception is Dan Toolan – a male who was hired as a wine sales representative in March of 2016 and whose initial compensation structure included a salary. Notably, as agreed pursuant to Nappi's restructuring of routes, Mr. Toolan's salary was completely eliminated in July of 2019, around the same date the Plaintiff's salary was reduced by one-sixth.

In short, the Plaintiff has been treated the same – or arguably more favorably – than all of the newly-hired wine sales representatives since 2014, regardless of sex. While she does not receive the same commission rate as her predecessors, those predecessors all had experience running wine sales routes – which the Plaintiff did not when she started working for Nappi – and they had tenure with the company, during which time many of them developed their routes. Therefore, the decisions Nappi made with regard to compensation packages for wine sales representatives were based on business considerations and not on the sex of the sales representatives.

## II.   NAPPI DID NOT RETALIATE AGAINST THE PLAINTIFF FOR ENGAGING IN ANY CONDUCT PROTECTED BY THE FEDERAL EQUAL PAY ACT.

Ms. Tourangeau alleges that Nappi retaliated against her for making several specific complaints of pay practices that allegedly violate the EPA. To prevail on such a retaliation claim a plaintiff must show, "at a minimum, … that (1) [she] engaged in a statutorily protected activity, and (2) [her] employer thereafter subjected [her] to an adverse employment action (3) as a reprisal for having engaged in protected activity." *Claudio-Gotay v. Becton Dickinson Caribe, Ltd.,* 375 F.3d 99, 102-103 (1st Cir. 2004) (*citing Blackie v. Maine,* 75 F.3d 716, 722 (1st Cir. 1996)). The First Circuit has joined other circuit courts of appeal in holding that "'it is the assertion of statutory rights . . . by taking some action adverse to the company . . . that is the

---

[2] Since the onset of COVID-19 and its effect on both on-premise and off-premise wine sales, Nappi has supplemented the incomes of many of their wine sales representatives with salaries to help the representatives weather the financial strain caused by reduced sales. However, these supplemental salary payments are not and were not intended to be permanent, and they have been or will be phased out as wine sales return to more typical levels.

hallmark of protected activity under § 215(a)(3).'" *Id.* at 102 (quoting *McKenzie v. Renberg's Inc.*, 94 F.3d 1478, 1486 (10th Cir. 1996); citing *EEOC v. HBE Corp.*, 135 F.3d 543, 554 (8th Cir. 1998)). The First Circuit has clarified that "[t]o engage in protected activity, 'the employee must step outside his or her role of representing the company and . . . file . . . an action adverse to the employer, actively assist other employees in asserting FLSA rights, or otherwise engage in activities that reasonably could be perceived as directed towards the assertion of rights protected by the FLSA.'" *Id.* (quoting *McKenzie*, 94 F.3d at 1486); *see also Morales v. Challenger Caribbean Corp.*, 8 F. Supp. 2d 126, 130 n.9 (D.P.R. 1998) (noting that "[t]he Equal Pay Act is an amendment to the FLSA"). In addition, the Supreme Court has held that retaliation claims under Title VII "must be proved according to traditional principles of but-for causation... [which] ... requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

The Plaintiff cannot demonstrate required elements for an EPA retaliation claim. First, although the Plaintiff alleges in a conclusory fashion that she engaged in protected activity under the EPA, the only conduct that could be fairly characterized as "protected activity" was the complaint she filed with the Maine Human Rights Commission ("MHRC") on April 8, 2019. However, that complaint was filed several months *after* she was notified of Nappi's plan to phase out her base salary. Therefore, the decision to modify her compensation structure could not have been caused by the filing of the MHRC complaint and, therefore, cannot constitute a retaliatory act against Plaintiff as a matter of law.

Second, to the extent the Plaintiff alleges that Nappi retaliated against her by "withholding" commissions on sales that were finalized while she was on short-term disability leave in May of 2019, the Plaintiff cannot demonstrate causation. As Nappi's Statement of Material Facts reflects, the Plaintiff opted to take a leave in May of 2019 under Nappi's short-term disability plan to address some medical issues. Under that plan, she received substitute compensation in lieu of her regular compensation – in other words, she was not entitled to her

salary or to commissions or incentives based on sales that were completed while she was out on leave. This plan has been applied by Nappi irrespective of the sex of the employee. Moreover, under Nappi's long-standing company policy, commissions and incentive compensation are earned when sales are finalized – which occurs when product is delivered by either delivery or sales personnel and payment is received and reconciled. Again, this policy has been applied by Nappi irrespective of the sex of the employee. Therefore, for reasons that have nothing to do with the Plaintiff's MHRC complaint, the Plaintiff was not entitled to any commissions and incentive compensation based on sales that were finalized while she was out on short-term disability leave in May of 2019. Since the Plaintiff's compensation during this leave would have been the same regardless on any allegations, she may have made to the MHRC, she cannot prove retaliation. Nappi is entitled to summary judgment on this claim.

### III.    TO THE EXTENT THE PLAINTIFF'S CLAIMS UNDER THE PREGNANCY DISCRIMINATION ACT ARE NOT TIME BARRED, NAPPI DID NOT VIOLATE THE PLAINTIFF'S RIGHTS UNDER THAT ACT.

The Pregnancy Discrimination Act, 42 U.S.C. §2000e(k) ("the PDA"), provides that "[t]he terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, . . . ; and women affected by pregnancy, childbirth, . . . shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work. . .." The PDA renders pregnancy-related discrimination subject to the provisions of Title VII of the Civil Rights Act of 1964, which in turn forbids a covered employer to "discriminate against any individual with respect to . . . terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). To establish a PDA claim under Title VII, a plaintiff must demonstrate: one, that she is a member of a protected class; two, that she was qualified for the position and performed her job satisfactorily; three, that her employer took an adverse employment action against her; and four, that the employer had a continuing need for the services that plaintiff had been rendering. *See Gorski v. New Hampshire Dept. Of Corrections*, 290 F.3d 466, 474-75 (1st Cir. 2002). If a plaintiff can

establish these facts, the burden of production shifts to the employer to provide a legitimate nondiscriminatory reason for the alleged adverse employment decision. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). If the employer makes such a showing, the burden of production then returns to the plaintiff, who must demonstrate that the employer's explanation was pretextual and that the real reason for the adverse action was discrimination based on the plaintiff's pregnancy. *See Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 56 (1st Cir.1999).

The Plaintiff appears to base her PDA claim on events that allegedly occurred in 2016 and 2017. Specifically, the Plaintiff alleges that she was not properly compensated while she was on maternity leave in 2016. She also alleges that Human Resources Director Christine Fox met with her on December 14, 2017 to discuss damage to and maintenance of Plaintiff's company vehicle, during which Plaintiff alleges Ms. Fox berated her and spoke to her about her emotional response to the conversation.

## A. The Plaintiff's PDA claim is time barred.

Before asserting a Title VII claim, a plaintiff must first file a timely charge of discrimination with the Equal Employment Opportunity Commission ("the EEOC"). *Lewis v. City of Chicago*, 560 U.S. 205, 210 (2010). In a deferral state, such as Maine, a claimant must file an administrative charge within 300 days after the occurrence of the alleged unlawful employment practice. *See Rivera-Díaz v. Humana Ins. of P.R., Inc.*, 748 F.3d 387, 390 (1st Cir. 2014); 42 U.S.C. § 2000e—5(e)(1) (providing "that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice . . . such charge shall be filed . . . within three hundred days after the alleged unlawful employment practice occurred . . ."); *see also* 5 M.R.S. § 4611 ("[A] complaint must be filed with the commission not more than 300 days after the alleged act of unlawful discrimination."). This time period is treated as a statute of limitations. *See Jorge v. Rumsfeld*, 404 F.3d 556, 564 (1st Cir. 2005) ("in a Title VII case, a plaintiff's unexcused failure to exhaust administrative remedies effectively bars the courthouse door"); *see also Zipes v. TWA*, 455 U.S. 385, 394 (1982) (characterizing the filing

requirement as a limitation period and noting that the legislative history indicated that "Congress intended the filing period to operate as a statute of limitations instead of a jurisdictional requirement").

Under these standards, the Plaintiff's PDA claim is time barred. As noted above, the actions the Plaintiff claims violated the PDA occurred, at the latest, on December 14, 2017. Therefore, the Plaintiff was required to file her administrative complaint with the MHRC on or before October 10, 2018. She did not do so. Since the Plaintiff did not file a complaint of discrimination with the MHRC until April 8, 2019, any alleged PDA violations that accrued before June 12, 2018 (which is 300 days prior to the filing of the MHRC complaint) are barred. *Lewis*, 560 U.S. at 210.

### B. To the extent the PDA claim is not time barred, Nappi's actions were based on legitimate business reasons that are not based on pregnancy.

The Plaintiff did not receive commissions or incentives based on sales that were finalized while she was on short-term disability leave after giving birth. In that regard, Nappi followed both its long-standing policy as to when commissions and incentives are earned: commissions and incentive compensation are earned when sales result in product being delivered and payment is received and reconciled. Nappi's policy in this regard is consistent with State laws which prohibit alcohol sales on a credit basis. *See* 28-A M.R.S. § 705. Moreover, Nappi followed its short-term disability plan when it paid the Plaintiff a wage substitute while she was short term disability leave after giving birth rather than commissions or incentives based on sales that were completed while she was out. In doing so, Nappi treated the Plaintiff the same as any other salesperson who has taken short term disability leave. Therefore, Nappi had a legitimate nondiscriminatory reason for paying the Plaintiff a wage substitute while she was short term disability leave after giving birth rather than commissions or incentives based on sales that were completed while she was out.

The discussion between the Plaintiff and Ms. Fox on December 14, 2017 also does not support a PDA claim. At the time of the alleged discussion – which allegedly occurred over a

year after her maternity leave – the Plaintiff was not a member of a protected class under the PDA, as she was not pregnant, nor had she recently given birth. Moreover, Plaintiff's pregnancy and maternity leave were not discussed during this conversation and the Plaintiff is not aware of any information to suggest that the conversation had any relationship to her maternity leave. Therefore, she does not fall within the protection of the statute with respect to the conversation with Ms. Fox.

In addition, there is no evidence in this case of an adverse employment action as part of the discussion. The discussion concerned the condition of the Plaintiff's vehicle and her failure to report damage. The Plaintiff concedes that she damaged her vehicle and did not report that damage to Nappi. The two women also discussed concerns that the Plaintiff was not keeping the interior of her vehicle clean. Again, the Plaintiff admits she had food on the floor and had spilled a smoothie along the side. While the Plaintiff may have considered Ms. Fox's alleged criticism unnecessary, it could not be considered unfounded. And the Plaintiff does not suggest that these criticisms were delivered with a tangible consequence. Based on these alleged facts, no adverse employment action occurred. *See Bhatti v. Trs. of Bos. Univ.*, 659 F.3d 64, 73 (1st Cir. 2011) (holding that when a formal reprimand does not, itself, execute tangible consequences, but is "merely directed at correcting some workplace behavior that management perceive[s] as needing correction," the reprimand generally does not constitute an adverse employment action); *see also Bergeron v. Cabral*, 560 F.3d 1, 7-8 (1st Cir. 2009) ("The term 'adverse employment action' arose in the Title VII context as a shorthand for the statutory requirement that a plaintiff show an alteration in the material terms or conditions of his employment." (citing *Power v. Summers*, 226 F.3d 815, 820 (7th Cir. 2000); 42 U.S.C. § 2000e-2(a)(1)) (abandoned on other grounds in *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009). Moreover, even if the alleged criticism could be characterized as an adverse employment action, it was grounded in a legitimate business purpose to maintain the integrity of the company's property. Therefore, the alleged criticisms could not support a PDA claim.

Finally, the comment the Plaintiff attributes to Ms. Fox about the Plaintiff's emotional reaction to their conversation does not rise to the level of adverse employment action. The Plaintiff alleges that she cried when Ms. Fox confronted her about the condition of her car and that Ms. Fox suggested that she see a doctor and get her medications checked. The Plaintiff also alleges that Ms. Fox recounted her own struggles balancing a job and a family. Of the latter exchange, the Plaintiff indicated that "we were just kind of like being nice and dialoguing." Even if the Court were to assume these allegations to be true, such comments did not alter the terms of employment. For all these reasons, the Plaintiff's PDA claim fails as a matter of law.

## IV.     TO THE EXTENT THE PLAINTIFF'S CLAIMS UNDER TITLE VII ARE NOT TIME BARRED, NAPPI DID NOT DISCRIMINATE AGAINST THE PLAINTIFF ON THE BASIS OF SEX.

In Count IV, the Plaintiff alleges that she was treated differently in terms of her compensation and working conditions based on her sex. In Count V, she alleges that Nappi took adverse action against her for rejecting a customer's sexual advances. For both claims, she seeks damages pursuant to Title VII. In Count VI, the Plaintiff alleges that Nappi violated her rights under the Maine Human Rights Act, 5 M.R.S. § 4571 *et seq.* ("the MHRA"). As discussed above, the Title VII claims are subject to a 300-day administrative filing requirement. The MHRA imposes a similar administrative filing requirement. *See* 5 M.R.S. § 4611 ("[A] complaint must be filed with the commission not more than 300 days after the alleged act of unlawful discrimination."). Absent compliance, these requirements bar the assertion of claims. *See Lewis*, 560 U.S. at 210.

### A.  The Plaintiff's claim based on compensation and unequal working conditions is either time barred or unsupported by the record.

The Plaintiff did not file a complaint of discrimination with the MHRC until April 8, 2019. Therefore, any alleged discriminatory conduct that accrued before June 12, 2018 (which is 300 days prior to the filing of the MHRC complaint) is not actionable. *Lewis*, 560 U.S. at 210. This would include any of the events discussed as part of the PDA claim, the alleged meeting

with Human Resources Director Christine Fox on December 14, 2017, and any other events alleged in the Complaint.

In any event, the record evidence in this case does not support the Plaintiff's Title VII claim. The standards and burden-shifting paradigm in Title VII cases is set forth above. *See supra* Argument III. As discussed in more detail elsewhere in this motion, the Plaintiff's allegations relating to her meeting with Ms. Fox on December 14, 2017 does not describe conduct that rises to the level of an "adverse employment action." *See supra* Argument III(B). Similarly, the Plaintiff's allegations that she was excluded from "work-related dinners" is both inaccurate – the Plaintiff was aware of only one dinner that she did not attend – and had no demonstrable impact on her job. Therefore, assuming the allegations about the dinner are true, they do not reflect an event that altered the material terms or conditions of her employment. The same observations are true for her allegation that she was excluded from an incentive-based compensation opportunity. The sole opportunity to which she refers in her Complaint was abandoned before completed. Therefore, she was not – and could not be – excluded because no wine sales representatives received anything as part of that opportunity, and the material terms or conditions of her employment were not affected.

Finally, to the extent the Plaintiff's Title VII claim is based on her allegations about how she was compensated during her short-term disability leaves and how her salary has been reduced, her claim fails because Nappi's actions in those regards were based on legitimate, nondiscriminatory business reasons. As those reasons are discussed at length elsewhere in this memorandum, Nappi will not repeat them here, but will incorporate them by reference. *See supra* Arguments I(B), II and III(B). Suffice to say, the Plaintiff's sex played no role in the decisions, as is demonstrated from the facts that the same policies applied to wine sales representatives regardless of their sex and the reduction of the Plaintiff's salary occurred around the same time the salary of a male wine sales representative who, like Plaintiff, was hired after 2014 and who was receiving a two percent commission was eliminated. Nappi's actions occurred for legitimate business reasons and were not discriminatory.

**B.  The Plaintiff's claim based on alleged quid pro quo harassment is either time-barred or unsupported by the record.**

The Plaintiff's "quid pro quo" discrimination claim is barred for failure to file a timely administrative action. The "unwelcome sexual advance" underlying the claim allegedly occurred in the summer of 2015. About two months later, the Plaintiff's supervisor reassigned the account where the advance allegedly occurred to another wine sales representative. Therefore, according to the Plaintiff's own timeline, the alleged advance and the reassignment of the pertinent account all occurred before the beginning of 2016. Since the Plaintiff did not file a MHRC complaint until April 8, 2019, she failed to exhaust her administrative remedies with regard to this claim and the claim is therefore time barred.

Even if the claim was not barred, it is not viable as a matter of law. A claim of quid pro quo sexual harassment can arise "where a supervisor conditions the granting of an economic or other job benefit upon the receipt of sexual favors from a subordinate, or punishes that subordinate for refusing to comply." *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 897 (1st Cir. 1988); *see also Hernandez-Loring v. Universidad Metropolitana*, 233 F.3d 49 (1st Cir. 2000). The United States Court of Appeals for the First Circuit appears to have adopted the position that "employers can be liable [under Title VII] for a customer's unwanted sexual advances, if the employer ratifies or acquiesces in the customer's demands." *Rodriguez-Hernandez v. Miranda-Velez*, 132 F.3d 848, 854 (1st Cir. 1998) (citing *Folkerson v. Circus Circus Enters., Inc.*, 107 F.3d 754, 756 (9th Cir. 1997)).

None of the elements of quid pro quo harassment exist in this case. The Plaintiff alleges that on one occasion, during normal business hours, the manager of one of her accounts suggested that she should join him and his girlfriend for drinks sometime. The comment did not necessarily bother the Plaintiff and nothing further was said about the comment. The Plaintiff indicated that she casually mentioned the comment to one of her supervisors, Ian Brown, who advised her not to join the account manager for drinks. Therefore, the alleged comment – on its face – did not seek any sexual favors, nor did the Plaintiff take the comment seriously. The

comment does not constitute a "sexual advance." Moreover, no one at Nappi ratified or acquiesced to the alleged conduct that the Plaintiff described. Nor were any job benefits conditioned upon the Plaintiff joining the account manager for drinks.

Finally, even if the alleged comment could be considered a "sexual advance," the Plaintiff was not punished by Nappi for declining it. The Plaintiff alleges that the account was reassigned from her route a couple months after the comment occurred. The Plaintiff does not have any personal knowledge as to why that was done. For his part, Paul Carr, the Wine Sales Director, testified that he moved the account because the account manager complained that the Plaintiff was not coordinating with him to discuss product orders. Since that time, a number of new accounts have been assigned to the Plaintiff's route, such that her current number of accounts is about the same as when she started in 2015. In fact, the current Director of Wine Sales, Matt Watson, has assigned one of the largest accounts in terms of wine sales volume in York County – Hannaford's grocery store in York – to the Plaintiff's route. And the Plaintiff acknowledges that as it is currently constituted, her sales route has better sales potential than when she started at Nappi. Therefore, even if the Plaintiff could show that there was some connection between the account manager's comment and the reassignment of the account, there is no evidence to suggest that she was punished for not having drinks with him and his girlfriend.

### C. The Plaintiff's claim under the Maine Human Rights Act is either time barred or unsupported by the record.

The Plaintiff alleges that Nappi violated her rights under the MHRA. For the same reasons discussed above with regard to the Plaintiff's Title VII claims, to the extent the claim is based on events that occurred before June 12, 2018, the claim is time barred.

In any event, the Court applies the same analysis to the MHRA claim as it does to the Title VII claims. *See Knight v. O'Reilly Auto Enters., LLC*, No. 2:17-cv-300-NT, 2019 U.S. Dist. LEXIS 47018, at *8 n.2 (D. Me. Mar. 21, 2019) ("Maine courts look to Title VII caselaw when considering MHRA claims." (citing *Cole v. Maine Office of Info. Tech.*, No. 1:17-CV-00071-JAW, 2018 U.S. Dist. LEXIS 163857, 2018 WL 4608478, at *27 (D. Me. Sept. 25, 2018) (citing

*Morrison v. Carleton Woolen Mills, Inc.*, 108 F.3d 429, 436 n.3 (1st Cir. 1997)))); *see also*

*Bowen* v. *Department of Human Servs.*, 606 A.2d 1051, 1053 (Me. 1992) (relying on federal case

law surrounding Title VII for the purpose of construing and applying the provisions of the

MHRA). Therefore, for the same reasons discussed above with regard to the Plaintiff's Title VII

claims, the Plaintiff's MHRA claim fails as a matter of law. Nappi is entitled to summary

judgment on the MHRA claim.

### V.    NAPPI DID NOT VIOLATE THE PLAINTIFF'S RIGHTS UNDER MAINE'S TIMELY AND FULL PAYMENT OF WAGES LAW.

Although the Plaintiff invokes the "timely and full payment of wages law," she does not

actually specify what provision of Maine law Nappi supposedly violated. She does allege that

"Defendant failed to pay Tourangeau commissions and incentives earned and owed for work she

performed within the time provided for under Maine's Timely and Full Payment of Wages Law."

To the extent the Plaintiff is suggesting that she was not paid her full wages at a regular interval

consistent with the provisions of 26 M.R.S. § 621-A(1), Nappi is entitled to summary judgment.

First, other than the Plaintiff's conclusory assertion, there is no allegation in this case

that Nappi has not paid the Plaintiff at a regular interval. Nor is there any record evidence to

support such an assertion. Therefore, Nappi presumes the Plaintiff's claim is premised upon her

allegations that Nappi owes her incentives and commissions from the periods that she was on

short-term disability in 2016 and 2019.[3]

However, as explained above, the Plaintiff has been fully compensated for her time out

on short-term disability leave. The Plaintiff opted to take leave under Nappi's short-term

disability plan, and therefore received replacement compensation according to the terms of the

---

[3] To the extent the Plaintiff suggests that she is entitled to the one-sixth salary reduction that was implemented in July of 2019, her claim under the timely payment statute is clearly meritless. As the Maine Law Court held in the context of another Maine wage statute, "a former employee may only claim what is owed according to the terms of the employment agreement; section 626 does not modify or supersede its terms." *Richardson v. Winthrop School Department*, 2009 ME 109, 983 A.2d 400 (quoted in *White v. Hewlett Packard Enter. Co.*, 985 F.3d 61, 69 (1st Cir. 2021)). Similarly, Section 621-A does not purport to modify or supersede the agreement between the Plaintiff and Nappi. Since the Plaintiff was advised of the proposed reduction in her salary well in advance, her decision to continue working under the revised terms of her employment precludes her from seeking recovery for the reduction amount under Section 621-A.

plan. Pursuant to Nappi's long-standing company policy that defines when commissions and incentive compensation are earned – specifically, when sales are fully finalized, which occurs when product is delivered by either delivery or sales personnel and payment is received and reconciled – the Plaintiff was not entitled to sales that were finalized while she was out on short-term disability leave. *Cf. Richardson*, 2009 ME 109, ¶ 7, 983 A.2d 400 (holding that in the context of 26 M.R.S. § 626, "*entitlement* to payment is governed solely by the terms of the employment agreement") (emphasis in original). Finally, as the Statement of Material Facts indicate, the Plaintiff has been fully paid for her salary, commissions, and incentives that she has earned. For these reasons, Nappi is entitled to summary judgment on the Plaintiff's state law wage claim.

## VI.   THE PLAINTIFF HAS NO VIABLE CLAIM AGAINST NAPPI BASED ON THE THEORY OF *QUANTUM MERUIT*.

The Plaintiff asserts a claim for damages under *quantum meruit* theory. *Quantum meruit* permits recovery for services or materials provided under an implied contract, which the Maine Law Court has described as "a contract inferred from the conduct of the parties." *Runnells v. Quinn*, 2006 ME 7, ¶ 10, 890 A.2d 713 (citing *Paffhausen v. Balano*, 1998 ME 47, ¶ 6, 708 A.2d 269). "A valid claim in *quantum meruit* requires: that (1) services be rendered to the defendant by the plaintiff; (2) with the knowledge and consent of the defendant; and (3) under circumstances that make it reasonable for the plaintiff to expect payment." *Paffhausen*, 1998 ME 47, ¶ 6, 708 A.2d 269 (quotation marks omitted). Moreover, the United States Court of Appeals for the First Circuit has noted that "under Maine law quantum meruit recovery may be available alongside contractual remedies when the services at issue are outside of the scope of the contract, or in 'circumstances that render the contract inoperative.'" *White v. Hewlett Packard Enter. Co.*, 985 F.3d 61, 70 (1st Cir. 2021) (quoting *Hodgkins v. New England Tel. Co.*, 82 F.3d 1226, 1232 (1st Cir. 1996); citing *Uncle Henry's Inc. v. Plaut Consulting Co. Inc.*, 399 F.3d 33, 46 (1st Cir. 2005) and *Runnells*, 2006 ME 7, 890 A.2d 713). Therefore, the First Circuit

has held that a plaintiff "cannot recover under a theory of quantum meruit for work that is directly addressed by his employment contract." *Id*. at 70-71 (citing *Hodgkins*, 82 F.3d at 1232).

The Plaintiff cannot establish a viable claim under *quantum meruit*. The Plaintiff does not allege that she has performed work for Nappi other than that as a wine sale representative. The record materials establish that the Plaintiff's relationship with Nappi as a wine sales representative is based on an at-will employment agreement. *See Burnell v. Town of Kingfield*, 686 A.2d 1072, 1073 (Me. 1996) (quoting *Terrio v. Millinocket Community Hosp.*, 379 A.2d 135, 137 (Me. 1977) ("It is well settled that a contract of employment for an indefinite length of time is terminable at will by either party."). Therefore, she cannot recover under *quantum meruit* for work she claims to have done and for which she seeks recovery. *See White*, 985 F.3d at 70-71.

Even if the Plaintiff could clear this hurdle, the record does not reflect that Nappi has failed to pay the Plaintiff for her services. Under Nappi's longstanding business policy, a salesperson earns a commission or is entitled to incentive payments for sales in which products are delivered and payments are received. Under that policy, the Plaintiff has been paid by Nappi for all commissions and incentives that she earned. To the extent the Plaintiff asserts she is entitled to commissions or incentives for products that Nappi delivered to customers and for which Nappi received payment while the Plaintiff was on short-term disability leave, her assertion is contrary to both Nappi sales policy and Nappi's short-term disability plan. By taking advantage of Nappi's short-term disability plan, the Plaintiff voluntarily opted to receive replacement compensation in lieu of her regular compensation.

Moreover, to the extent the Plaintiff seeks recovery under *quantum meruit* based on the change in her base salary, her claim is meritless. Nappi advised the Plaintiff in December of 2018 that it was planning to gradually reduce her base salary by half over a three-year period. The first (and to date only) such reduction took effect on July 1, 2019. Having been notified of this change in her compensation structure several months before implementation, the Plaintiff cannot claim that she has not been paid for work she performed under that modified pay structure. For all these reasons, the Plaintiff's *quantum meruit* claim fails as a matter of law.

### VII.   THE PLAINTIFF HAS NO VIABLE CLAIM AGAINST NAPPI BASED ON THE THEORY OF UNJUST ENRICHMENT.

The Plaintiff seeks damages under the theory of unjust enrichment. "[T]o establish a claim for unjust enrichment, a party must prove (1) that it conferred a benefit on the other party; (2) that the other party had appreciation or knowledge of the benefit; and (3) that the acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value." *Howard & Bowie, P.A. v. Collins*, 2000 ME 148, 759 A.2d 707, 710 (Me. 2000) (internal quotation marks and citation omitted). Unjust enrichment is not available if the parties have based their relationship on a contract. *See Nadeau v. Pitman*, 1999 ME 104, ¶ 14, 731 A.2d 863 (citation omitted). "The remedy of unjust enrichment describes recovery for the value of the benefit retained when there is no contractual relationship, but when, on the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay." *Id*. This Court has noted that "the Court cannot allow recovery 'where the parties have made a contract for themselves, covering the whole subject matter.'" *Ingram v. Rencor Controls, Inc.*, 256 F. Supp. 2d 12, 24 (D. Me. 2003) (citing *Fed. Ins. Co. v. Maine Yankee Atomic Power Co.*, 183 F. Supp. 2d 76, 84 n.12 (D. Me. 2001) (*quoting Prest v. Inhabitants of Farmington*, 117 Me. 348, 104 A. 521, 523-24 (1918)). This Court has further observed that allowing recovery under a theory of unjust enrichment in the context of a contractual relationship "'would … be an impermissible end run around a voluntary structuring of relationships and their consequences.'" *Id*. (quoting *Maine Yankee*, 183 F. Supp. 2d at 85).

Nappi is entitled to summary judgment on this claim for two reasons. First, the Plaintiff's relationship with Nappi is based on an at-will employment agreement. *See Burnell*, 686 A.2d at 1073 (quoting *Terrio,* 379 A.2d at 137). Therefore, even if the Plaintiff could establish the other elements of unjust enrichment, the theory is not available to her. *See Nadeau*, 1999 ME 104, ¶ 14, 731 A.2d 863. Second, there is no evidence in this case that the Plaintiff has conferred a benefit on Nappi for which she has not been compensated, nor is there any inequity. As noted above, under Nappi's longstanding business policy, Nappi has paid the Plaintiff all commissions

and incentives that she earned. To the extent the Plaintiff asserts she is entitled to commissions or incentives for products that Nappi delivered to customers and for which Nappi received payment while the Plaintiff was out on short-term disability, her assertion is contrary to both Nappi policy and Nappi's short-term disability plan. By taking advantage of Nappi's short-term disability plan, the Plaintiff voluntarily opted to receive replacement compensation in lieu of regular compensation.

Moreover, to the extent the Plaintiff asserts unjust enrichment based on the change in her base salary, her claim is meritless. As noted above, Nappi advised the Plaintiff in December of 2018 that it was planning to gradually reduce her base salary by half over a three-year period. The first (and to date only) such reduction took effect on July 1, 2019. Having been notified of this change in her compensation structure several months before the change was implemented, the Plaintiff cannot claim that work she performed under that modified compensation structure conferred a benefit for which equity requires compensation. For all of these reasons, the Plaintiff's unjust enrichment claim fails as a matter of law.

## CONCLUSION

For the reasons set forth in this Motion and incorporated memorandum of law, Nappi is entitled to summary judgment on all claims in this matter.

Dated at Portland, Maine this 6th day of December, 2021.

> Attorneys for Defendant
> MONAGHAN LEAHY, LLP
> 95 Exchange Street, P.O. Box 7046
> Portland, ME 04112-7046
> (207) 774-3906
> jwall@monaghanleahy.com

BY:      /s/ John J. Wall, III
         John J. Wall, III

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on December 6, 2021, I electronically filed **Defendant's Motion for Summary Judgment, with Incorporated Memorandum of Law** using the CM/ECF system, which will provide notice to me and all other counsel of record.

Dated at Portland, Maine this 6th day of December, 2021.

Attorneys for Defendant
MONAGHAN LEAHY, LLP
95 Exchange Street, P.O. Box 7046
Portland, ME 04112-7046
(207) 774-3906
jwall@monaghanleahy.com

BY:    /s/ John J. Wall, III
       John J. Wall, III