UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MICHELE TOURANGEAU,      )<br>                                             )<br>        Plaintiff,                      )<br>                                             )<br>  v.                                       )<br>                                             )          No. 2:20-cv-00012-JAW<br>NAPPI DISTRIBUTORS,       )<br>                                             )<br>        Defendant.                   ) | |

**ORDER ON DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF AN ALLEGED HOSTILE WORK ENVIRONMENT PRIOR TO MICHELE TOURANGEAU'S FILING OF A COMPLAINT WITH THE MAINE HUMAN RIGHTS COMMISSION ON APRIL 8, 2019**

In anticipation of trial, an employer files a motion in limine to exclude evidence of (1) emails exchanged by various of its employees prior to April 8, 2019; (2) a statement allegedly made by its former sales manager that it should not hire women because it has to cover maternity leave; and (3) statements and/or other evidence that it had a discriminatory practice of not hiring women sales representatives prior to 2015, when the plaintiff was hired.  The employer contends that the emails are irrelevant and admitting them would unfairly prejudice the employer.  The employer next contends that the alleged statement made by its former sales manager is impermissible lay opinion, inadmissible hearsay, irrelevant, and unfairly prejudicial to the employer.  The employer further contends that any history of its employment of women is impermissible lay opinion, inadmissible hearsay, and unfairly prejudicial to the employer.

The Court concludes that the emails and the former sales manager's statement are admissible but preliminarily grants the motion to exclude evidence regarding hallway gossip about the employer's discriminatory practices.

## I.     PROCEDURAL HISTORY

On January 3, 2023, the Court held a final pretrial conference and issued an order, establishing deadlines in anticipation of the jury trial scheduled for February 27, 2023 through March 3, 2023.  *Report of Final Pretrial Conf. and Order* (ECF No. 116) (*Pretrial Order*).  In its Pretrial Order, the Court set January 30, 2023 as the date by which any motions in limine must be filed and February 6, 2023 as the date by which any responses must be filed.  *Pretrial Order* at 2.

On January 30, 2023, Nappi filed a motion in limine to exclude evidence of an alleged hostile work environment prior to Ms. Tourangeau's filing of a complaint with the Maine Human Rights Commission on April 8, 2019.  *Def. Nappi Distributors' Mot. in Limine* at 1-11 (ECF No. 124) (*Def.'s Mot.*).[1]  On the same day, Ms. Tourangeau filed a motion to request a weeklong extension of the Court's scheduling order as set out in the Pretrial Order.  *Mot. to Am. Procedural Order* (ECF No. 129).  Over objection, the Court granted Ms. Tourangeau's motion on January 31, 2023 and extended the filing date for motions in limine to February 6, 2023 and for responses to February 13, 2023.  *Order* (ECF No. 131).

---

[1]     Nappi filed a consolidated motion in limine, raising six different evidentiary issues.  *Def.'s Mot.* at 1-23.  In this Order, the Court is addressing the first issue presented in Nappi's motion.  *Id.* at 1-11.

2

On the same day, Nappi filed a motion for reconsideration asking the Court to "reconsider its January 31, 2023 Order on the Plaintiff's Motion to Amend Procedural Order" or alternatively "amend the January 31 Order to provide that the Plaintiff will have one week to prepare responses to Nappi's timely filed motions in limine." *Def. Nappi Distributors' Mot. to Reconsider Order on Mot. to Am. Procedural Order* (ECF No. 132) (*Mot. for Recons.*). On February 1, 2023, Ms. Tourangeau replied. *Pl.'s Opp'n to Def.'s Mot. for Recons.* (ECF No. 134). Concluding that "justice would be better served if it had both the Plaintiff's and the Defendant's submissions so that it could make the correct rulings and prepare appropriate jury instructions" and that "the impact on Nappi [and the Court], although real, appeared manageable," the Court denied Nappi's Motion for Reconsideration. *Order Denying Mot. for Recons.* at 9-10 (ECF No. 136).

On February 13, 2023, Ms. Tourangeau filed her response to Nappi Distributors' motion in limine to exclude evidence of an alleged hostile work environment prior to Ms. Tourangeau's filing of a complaint with the Maine Human Rights Commission on April 8, 2019. *Pl.'s Resp. to Def.'s Mots. in Limine* at 1-11 (ECF No. 154) (*Pl.'s Opp'n*).

The Court's Final Pretrial Order provided that "[n]o replies will be allowed except by motion." *Pretrial Order* at 2. No such motion was filed.

II.  **THE PARTIES' POSITIONS**

    A.  **Nappi's Motion in Limine**

3

Nappi anticipates that "Ms. Tourangeau will attempt to introduce: (1) emails exchanged by various employees prior to April 8, 2019; (2) a statement allegedly made by a former Nappi employee that Nappi should not hire women because they have to cover maternity leave; and (3) statements and/or other evidence that Nappi had a discriminatory practice of not hiring women sales representatives prior to 2015." *Def.'s Mot.* at 1. Nappi contends that "[b]ecause this evidence is not relevant to any of Ms. Tourangeau's claims, constitutes hearsay, is based on mere speculation, and is unfairly prejudicial, it should be excluded from trial." *Id.*

### 1. Emails Exchanged Between Nappi Employees Prior to April 8, 2019

Regarding emails sent prior to April 8, 2019, Nappi contends that because Ms. Tourangeau "has not asserted an independent hostile work environment claim [but] [r]ather, has asserted a hostile work environment as part of her retaliation in violation of the Equal Pay and Maine Human Rights Acts claims," her retaliation claim "must be limited in scope to conduct that occurred *after* she filed" her MHRC complaint on April 8, 2019 as she "cannot establish the necessary element of causation for actions or conduct that occurred prior to filing the complaint with the MHRC." *Id.* at 1-2 (emphasis in *Def.'s Mot.*). Nappi further contends that for this reason, "any allegations of rudeness, ostracism, or other conduct at Nappi that occurred prior to April 8, 2019 are irrelevant to any of Ms. Tourangeau's claims." *Id.* at 3. Nappi therefore urges the Court to exclude "all evidence related to an alleged hostile work environment that occurred prior to April 8, 2019, including all emails exchanged between other Nappi employees prior to April 8, 2019 (of which Ms.

4

Tourangeau was not a party)" because "there is no evidence that [Ms. Tourangeau] was ever aware of the emails prior to this litigation" and this evidence therefore "has no tendency to make any fact of consequence any more or less probable" under Federal Rule of Evidence 401. *Id.* at 3-4.

Specifically regarding emails sent by former Chief Financial Officer Elmer Alcott, who retired in 2014, Nappi contends that these emails should be excluded because "Mr. Alcott was not at all involved in the hiring of sales representatives" and, "to the extent Mr. Alcott sent emails to other Nappi employees after his retirement . . . those emails cannot be attributed to Nappi, as Mr. Alcott was no longer a Nappi employee and therefore not acting in any capacity as an agent of the company." *Def.'s Mot.* at 4.

Nappi submits generally that "even if the Court found that these emails were relevant to one of Ms. Tourangeau's claims, any relevance would be significantly outweighed by the danger of unfair prejudice, misleading the jury, and confusing the issues" under Federal Rule of Evidence 403. *Id.* at 5. Nappi specifies that "[g]iven the nature of the materials at issue in the emails, Nappi would be unfairly prejudiced by admission of the emails because a jury could emotionally react to such images and language and may "unfairly attribute the content of the emails to Nappi as a whole and not just the few individuals who actually sent the emails." *Id.*

### 2. Statement Allegedly Made by Former Nappi Sales Manager Frank Maiorino

Nappi anticipates Ms. Tourangeau "will attempt to introduce evidence at trial through witness Dan Toolan that Frank Maiorino, a former Nappi employee, stated

5

to him something to the effect of 'we should not hire women because you have to cover their maternity leave,'" *id.* at 5 (internal quotations omitted), and urges the Court to exclude this evidence "because it is hearsay, lay opinion, irrelevant, and unfairly prejudicial." *Id.* Nappi contends more specifically that this statement should be excluded because: (1) "Mr. Toolan testified that this was the only time he had ever heard Mr. Maiorino say something about having to cover maternity leave;" (2) "Ms. Tourangeau testified that she was not aware that Mr. Maiorino had made the alleged statement until she read it in Mr. Toolan's affidavit as part of this litigation"; (3) "Mr. Maiorino never stated to Ms. Tourangeau that women should not be hired because Nappi would have to cover their maternity leave"; and (4) Mr. Maiorino was never Ms. Tourangeau's supervisor." *Id.* at 6.

Nappi first argues under Federal Rule of Evidence 701 that Mr. Maiorino's statement must be excluded because it constitutes inadmissible lay opinion testimony. Nappi contends that "Mr. Maiorino's alleged statement, of which we do not even know the exact language—just that it was *to the effect of*—is nothing more than his personal opinion, allegedly made in a fit of anger, that Nappi should not hire women because he has to arrange coverage for maternity leave." *Id.* (emphasis in *Def.'s Mot.*). Nappi explains how "[t]his is an opinion held solely by Mr. Maiorino— not Nappi—and there is absolutely no evidence to suggest otherwise." *Id.* Moreover, there is "no evidence that his opinion falls within the scope of the limited circumstances in which lay opinion testimony is admissible [because] there is no evidence concerning whether the opinion is rationally based on Mr. Maiorino's

6

perception or whether it would be helpful in determining some aspect of Mr. Toolan's testimony or of a fact in consequence." *Id.* at 6-7.

Nappi next argues that "Mr. Toolan's testimony concerning what Mr. Maiorino allegedly stated constitutes inadmissible hearsay and must be excluded at trial" under Federal Rules of Evidence 801(c) and 802. *Id.* at 7. Nappi contends that the statement "is an out-of-court statement offered for the truth of the matter asserted . . . [and] unless the statement falls within an exception to the hearsay rule," which Nappi claims it does not, then "the statement is inadmissible at trial." *Id.*

Finally, Nappi argues that Mr. Maiorino's alleged statement is "irrelevant to the Plaintiff's claims" because "it is undisputed that no one aside from Mr. Toolan was aware of Mr. Maiorino's alleged comment prior to the commencement of this litigation," *id.* at 8, and Mr. Maiorino "had no supervisory role over Ms. Tourangeau." *Id.* at 9. Nappi concludes that "even if the statement were somehow relevant to Ms. Tourangeau's complaint, it must be excluded because its slight relevance is substantially outweighed by the unfair prejudice to Nappi." *Id.*

### 3. History of Women Working at Nappi

Nappi anticipates that "Ms. Tourangeau will argue that Nappi Distributors had a discriminatory pattern of not hiring women sales representatives prior to her employment in 2015" and urges the Court to exclude such evidence because Ms. Tourangeau's allegation "that the absence of women sales representatives employed by Nappi prior to 2015 was based on sex discrimination" is "based on nothing more than hearsay, gossip, and speculation." *Id.* Nappi explicates that "Ms. Tourangeau

7

admitted in her deposition that her belief that Nappi discriminated in hiring on the basis of sex is based on 'a lot of talk' that women do not get certain jobs because they are women" and "she could not give a single specific example of this, nor could she identify who these alleged declarants are." *Id.* at 10.

Nappi argues that "[t]o the extent Ms. Tourangeau seeks to testify about an 'understanding' amongst unidentified employees based on nothing more than speculation and gossip that women were not hired for certain positions, without identifying who the original declarants are, the Court must exclude her testimony on the ground that it constitutes inadmissible hearsay." *Id.* (citing *Vazquez v. Lopez-Rosario*, 134 F.3d 28, 34 (1st Cir. 1998)). Nappi specifies that "Ms. Tourangeau's testimony concerning what her friend Ms. Gallagher told [Ms. Tourangeau] that another Nappi employee told [Ms. Gallagher], Ms. Tourangeau's testimony in that regard must be precluded because it constitutes hearsay within hearsay," especially because Ms. Gallagher "has never been identified as a witness in this case nor is she expected to testify at trial." *Id.* at 10-11.

Finally, Nappi asks the Court to exclude the testimony of Jim Bourque, who speculated "that the two primary reasons [why Nappi didn't hire a female wine sales representative until 2015] were: one, because Nappi did not receive many applications from women; and two, there is a significant physical component of the job, which he suggested could involve delivering a barrel weighing 'more than him' alone in the evening." *Id.* at 11. Nappi submits that "Mr. Bourque has no personal knowledge of any individual female who did not apply for a sales position due to the

8

physical component of the job, but was merely speculating about why so few women applied for wine sales representative positions prior to 2015" and thus "this testimony must be excluded on the grounds that it is impermissible lay opinion evidence under [Rule] 701 . . . and would be unfairly prejudicial to Nappi because a jury may believe Mr. Bourque's musings are based in fact." *Id.*

### B. Michele Tourangeau's Opposition

#### 1. Emails Exchanged Between Nappi Employees Prior to April 8, 2019

Ms. Tourangeau responds first to Nappi's contention that the Court should exclude a series of emails between Nappi employees before April 8, 2019. *Pl.'s Opp'n* at 1-3. To her opposition, Ms. Tourangeau attached an exhibit consisting of eighty-four pages containing sexist emails. *Id.* Attach. 1, *Sexist Emails* at 1-84 (*Sexist Emails*). Ms. Tourangeau contends that these emails demonstrate that Nappi's management "has a history of exchanging offensive emails containing sexist 'jokes' at the expense of women, which perpetuates the culture of sexism at the company." *Id.* at 1. Ms. Tourangeau points to four issues she contends demonstrate Nappi's sex discrimination: (1) that Nappi failed to hire women in the sales representative position prior to 2015; (2) that Nappi's failure to do so was "part of Nappi's discriminatory hiring practice; (3) that the decision to pay her 2% commission, not 3% commission, was due to sex discrimination; and (4) that Nappi's later decision to eliminate her salary and not provide her with a 3% commission. *Id.* Ms. Tourangeau contends that these emails are "direct evidence of Nappi management's discriminatory animus and bias against women." *Id.* at 2.

9

Ms. Tourangeau observes that Frank Nappi[2], who was copied on many of the emails, was "one of the decisionmakers in Ms. Tourangeau's compensation and the decision to 'grandfather' some sales representatives at 3%." *Id.* at 2. According to Ms. Tourangeau, Mr. Nappi also indicated that if he had been aware of these emails, he would have taken disciplinary action to stop them. *Id.* Ms. Tourangeau says, therefore, that the emails affect Mr. Nappi's credibility. *Id.*

Next, Ms. Tourangeau points out that Elmer Alcott, who was the Chief Financial Officer of Nappi and who participated in the decision to lower the sales commission from 3% to 2%, either sent or received many of these emails. *Id.*

Finally, Ms. Tourangeau concedes that some emails are not from management, but she contends that Nappi hired sales representatives based on the recommendations of the employees who sent them, and the emails reveal their biases.[3] *Id.*

---

[2]   Ms. Tourangeau does not identify Frank Nappi. According to this Court's Order on Motion for Summary Judgment, there were two Frank Nappis at Nappi Distributors: Frank Nappi, Sr., who owned and ran Nappi until he died in 2020 or 2021, *Am. Order on Mot. for Summ. J.* at 8 (ECF No. 112), and Frank Nappi, Jr., who was identified as the President of Nappi Distributors. *Id.* at 9. As these emails are dated from 2013 to 2017, the Frank Nappi in the emails could have been either Frank Nappi, Sr. or Frank Nappi, Jr. The Court assumes that Frank Nappi, Jr. was the recipient of copies of these emails, because Ms. Tourangeau later confirms that Mr. Nappi was the one who decided to grandfather some commissions at 3%, and the Court's order on the motion for summary judgment confirms that Frank Nappi, Jr. was the person involved in that decision. *Id.* at 9 n.13.

[3]   In her response, Ms. Tourangeau refers to evidence that was made part of the summary judgment record, namely a report from SevenFifty, an online marketplace and communications platform for the beverage industry, which she sent to "Mr. Watson." *Pl.'s Opp'n* at 3. Ms. Tourangeau does not identify Mr. Watson; however, his name appears in the Court's order on motion for summary judgment and pursuant to the dispositive motion, Mr. Watson's deposition was taken. *See Additional Attachs.* Attach. 5, *Dep. of Matt Watson* (*Watson Dep.*) (ECF No. 93). According to his deposition testimony, Mr. Watson was hired as Director of Wine Sales at Nappi on August 15, 2018. *Watson Dep.* 11:9-15.

In its motion in limine, Nappi refers in general to emails, but it did not attach or refer to specific emails, *Def.'s Mot.* at 3-5, and in her response, Ms. Tourangeau attached so-called sexist emails. *Sexist Emails.* But the Court does not have the Tourangeau email to Mr. Watson, the report

### 2. Statements by Frank Maiorino

In her response, Ms. Tourangeau clarifies some of what is omitted in Nappi's motion concerning the Maiorino statement. First, Frank Maiorino was not retired when he made the statement nor was he a mere employee. *Pl.'s Opp'n* at 4. He was the manager of the Nappi wine department. *Id.* Dan Toolan was a sales assistant who had not yet been assigned a route. *Id.* at 4-5. Mr. Maiorino made the statement while at work outside his office. *Id.* at 5.

Ms. Tourangeau sets forth a somewhat convoluted cat's paw theory of admissibility, saying that even though Mr. Maiorino did not have "ultimate control" over her, he reported directly to a man named Mike Hale, who formed a negative opinion of Ms. Tourgangeau while she was out on maternity leave. *Id.* at 5-6.

### 3. History of Women Working at Nappi

In her response, Ms. Tourangeau confirms that she "does intend to argue" that Nappi had a "discriminatory pattern of not hiring women sales representatives prior to her employment and that the absence of women sales representatives employed by Nappi prior to 2015 was based on sex discrimination." *Id.* at 6. Ms. Tourangeau then lists twenty-nine pieces of evidence that she contends demonstrate that Nappi's actions in offering Ms. Tourangeau a lower initial commission rate and its subsequent reduction of her salary was the result of discriminatory hiring practices. *Id.* at 6-11.

## III. DISCUSSION

### A. Relevance and Prejudice

---

to which it makes reference, and therefore declines to rule on the Watson email issue, if it is in fact the subject to Nappi's motion in limine.

"A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal rules. Assessing the probative value of [the proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . ." *United States v. Abel*, 469 U.S. 45, 54 (1984). Federal Rule of Evidence 401 states that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." FED. R. EVID. 401. "Relevancy is a very low threshold." *United States v. Cruz-Ramos*, 987 F.3d 27, 42 (1st Cir. 2021). "'[T]he evidence need not definitively resolve a key issue in the case,' but rather 'need only move the inquiry forward to some degree.'" *Id.* (citing *Bielunas v. F/V Misty Dawn, Inc.*, 621 F.3d 72, 76 (1st Cir. 2010)). In the First Circuit's words, "it is no exaggeration to say that '[a] relevancy-based argument is usually a tough sell.'" *Id.* (citing *Bielunas*, 621 F.3d at 76) (alterations in *Cruz-Ramos*).

Relevant evidence is generally admissible, while "[i]rrelevant evidence is not admissible." FED. R. EVID. 402. However, "[t]he Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

### B.    Inadmissible Hearsay

Federal Rule of Evidence 802 prohibits the admission of hearsay. Hearsay is an "out-of-court statement offered 'in evidence to prove the truth of the matter

asserted in the statement.'" *United States v. Fígaro-Benjamín*, 394 F. Supp. 3d 191, 195 (D.P.R. 2019) (quoting FED. R. CIV. P. 801(c)). "[A]n out-of-court statement is not hearsay if it is relevant regardless of its truth (say, to show state of mind)." *Ira Green, Inc. v. Military Sales & Serv. Co.*, 775 F.3d 12, 19 (1st Cir. 2014). A prior statement by an opposing party is not hearsay when it "is offered against an opposing party and . . . was made by the party in an individual or representative capacity," is a statement that "the party manifested that it adopted or believed to be true," or "was made by a person whom the party authorized to make [the] statement . . . or was made by the party's agent or employee." FED. R. EVID. 801(d)(2)(A)-(D). Rule 805 provides that "hearsay within hearsay" is admissible only when each level of hearsay would be individually admissible. FED. R. EVID. 805.

### C. Impermissible Lay Opinion

Federal Rule of Evidence 701 governs impermissible lay opinion testimony and provides that:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact at issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of 702.

Rule 701 "is meant to admit testimony based on the lay expertise a witness personally acquires through experience, often on the job." *United States v. Maher*, 454 F.3d 13, 24 (1st Cir. 2006).

### 1. Emails Exchanged Between Nappi Employees Prior to April 8, 2019

Nappi contends that emails exchanged between Nappi employees prior to April 8, 2019 must be excluded from trial because they are irrelevant under Rule 401 and unduly prejudicial to Nappi under Rule 403.  *Def.'s Mot.* at 1-5.  Nappi takes the position that no evidence before Ms. Tourangeau's April 8, 2019 filing of a complaint with the Maine Human Rights Commission (MHRC) is admissible since the only relevant issue is whether Nappi retaliated against her because of her complaint.  *Id.* at 1-3.  The Court disagrees.

What is arguably revealed from the sexist email exchanges in Ms. Tourangeau's first attachment is evidence of a college fraternity atmosphere at Nappi before Ms. Tourangeau's arrival as an employee.  The emails contain puerile, gender-based jokes and some images of topless women.  *Sexist Emails* at 9-84.  They were circulated to and by Nappi management, sometimes to long lists of recipients at Nappi, including management and some women employees.  *Id.*  Whatever the reaction to these emails, a jury could well find that they are not appropriate for the workplace.  A jury could also infer that the emails explain Nappi's retaliation against Ms. Tourangeau's filing of a complaint with the MHRC, because Nappi resented her role in putting an end to its old boy atmosphere.  At the same time, a jury could view the emails as harmless and unconnected to the later allegations of retaliation.  Even though the emails contain some female nudity and sexist jokes and to that extent may be prejudicial, the Court does not conclude that the probative value is substantially outweighed by their prejudicial impact.  FED. R. EVID. 403.

There is one exception. The first email in Ms. Tourangeau's so-called sexist email string is an email forward by Frank Maiorino, a manager of the wine department at Nappi, to Terry O'Brien, a Nappi salesman, and to Elmer Alcott, a Nappi Vice President and its CFO of Nappi from 2009 to 2014,[4] dated March 20, 2017, attaching a "Message from Germany." *Sexist Emails* at 1-8. The Message from Germany is an anti-Muslim and pro-President Trump email and does not appear to have anything to do with this case. The Court views it as irrelevant and prejudicial and will exclude it.

As for the rest of the sexist email attachment, the Court denies Nappi's motion in limine and will allow the exhibit.

### 2. Statement Allegedly Made by Nappi's Former Sales Manager Frank Maiorino

Nappi contends that an alleged statement made by its former sales representative Frank Maiorino that Nappi should not hire women because then it must cover their maternity leaves should be excluded from trial as irrelevant under Rule 401 and unfairly prejudicial to Nappi under Rule 403. Nappi further contends that the alleged statement is inadmissible hearsay under Rules 801(c) and 802 and impermissible lay opinion under Rule 701.

### 3. Statements by Frank Maiorino

---

[4] The Court found this information in Mr. Alcott's deposition. *Joint R.* Attach. 9, *Dep. of Elmer Alcott* 6:25-8:10 (ECF No. 65).

Preliminarily, the Court observes that, as the parties have presented it, the exact evidence that Nappi wishes to exclude has been obscured in advocacy. In its motion, Nappi describes the evidence:

> It is anticipated that the Plaintiff will attempt to introduce evidence at trial through witness Dan Toolan that Frank Maiorino, a former Nappi employee, stated to him "something to the effect of 'we should not hire women because you have to cover their maternity leave.'"

*Def.'s Mot.* at 5. This description of the evidence is threadbare and omits such critical information as: (1) what was Mr. Maiorino's position at Nappi, (2) who is Dan Toolan; (3) when was the statement made; and (4) what, if any, was the relationship between the statement and Ms. Tourangeau. On this basis alone, the Court could deny the motion.

Ms. Tourangeau's response fills in some of the blanks. She says that at the time Mr. Maiorino made the statement, Mr. Maiorino was a manager of the wine department. *Pl.'s Opp'n* at 4. She says that Mr. Maiorino made the statement outside Mr. Maiorino's office. *Id.* at 5. She also says that when the statement was made, Ms. Tourangeau was out on maternity leave. *Id.* She describes Dan Toolan as a sales assistant who had not yet been assigned a route. *Id.* at 5. In her response, Ms. Tourangeau describes a rather convoluted chain of command between Mr. Maiorino and Mike Hale. Ms. Tourangeau does not say who Mike Hale was at Nappi, but the Court located his position in its order on the motion for summary judgment. *Am. Order on Mot. for Summ. J.* at 26 ("Mike Hale was an off-premise wine sales manager with Nappi for more than twenty years"). Applying the "cat's paw" theory, Ms.

16

Tourangeau contends that Mr. Maiorino's gender bias affected Mike Hale's disapproval of Ms. Tourangeau. *Pl.'s Opp'n* at 5.

Based on the limited information before the Court, the Court denies Nappi's motion. Nappi's contention that the statement is inadmissible lay opinion testimony is frivolous. *See* FED. R. EVID. 701. Next, contrary to Nappi's implication, when he made the statement, Mr. Maiorino was more than a "retired employee;" he was the manager of Nappi's wine department, and he was referring to Ms. Tourangeau's maternity leave when he made the statement. Mr. Maiorino made the statement while at work to a Nappi employee in the sales department.

While Nappi may be able to blunt the impact of the Maiorino statement by saying that it was said in a "fit of anger" or it does not represent the views of other Nappi managers, *Def.'s Mot.* at 6, it is not inadmissible because it is potentially prejudicial to Nappi. Federal Rule of Evidence 403 does not exclude prejudicial evidence; it excludes only evidence that is unfairly prejudicial. FED. R. EVID. 403. The Maiorino statement is clearly admissible.

### 4. History of Women Working at Nappi

Nappi contends that the history of women working at Nappi is generally inadmissible and particularly so as demonstrated by statements allegedly made by Ms. Gallagher and Mr. Bourque must be excluded from trial as unduly prejudicial to Nappi under Rule 403. *Def.'s Mot.* at 9-11. Nappi further contends that these statements are inadmissible hearsay under Rules 801(c), 802, and 805 and impermissible lay opinion under Rule 701. *Id.*

17

The Court breaks down this motion into two separate parts. First, the Court rejects the contention that Ms. Tourangeau will not be allowed to demonstrate that Nappi's history of hiring men, not hiring women, and paying women less than men reflects discriminatory behavior on the part of Nappi. Nappi's objections to this evidence go to weight, not admissibility.

Second, as framed by Nappi, evidence about an "understanding" regarding Nappi's discriminatory practices among unidentified employees runs afoul of the First Circuit's guidance in *Vazquez v. Lopez-Rosario*, 134 F.3d 28, 33-34 (1st Cir. 1998). Watercooler talk or hallway gossip among unidentified employees about an employer's supposed employment practices are "properly excluded as hearsay." *Id.* at 34. Before Ms. Tourangeau seeks to introduce such evidence, she must approach the bench and receive a final ruling.

## IV.   CONCLUSION

The Court GRANTS in part and DENIES in part the Defendant's Motion in Limine to Exclude Evidence of an Alleged Hostile Work Environment Prior to Ms. Tourangeau's Filing of a Complaint with the Maine Human Rights Commission on April 8, 2019 (ECF No. 124 at 1-11). Regarding the emails exchanged prior to April 8, 2019, the Court DENIES the motion. Regarding the alleged statement made by Mr. Maiorino, the Court DENIES the motion. Regarding the history of women working at Nappi, the Court PRELIMINARILY GRANTS the motion but only as regards hallway gossip testimony.

SO ORDERED.

                                              <u>/s/ John A. Woodcock, Jr.</u>
                                              JOHN A. WOODCOCK, JR.
                                              UNITED STATES DISTRICT JUDGE

Dated this 16th day of February, 2023