UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MICHELE TOURANGEAU, )<br>)<br>　　　　Plaintiff, )<br>)<br>v. )<br>) No. 2:20-cv-00012-JAW<br>NAPPI DISTRIBUTORS, )<br>)<br>　　　　Defendant. ) | |

**ORDER ON DEFENDANT'S MOTION IN LIMINE TO EXCLUDE INTRODUCTION OF THE "SEVENFIFTY REPORT"**

In anticipation of trial, the employer files a motion in limine to exclude introduction of the "SevenFifty Report"[1] regarding gender-based pay discrepancies in the beverage industry at trial on the grounds that it is inadmissible hearsay. The employer anticipates that the plaintiff may introduce the report as evidence of a pay disparity between men and women at the company rather than in the beverage industry as a whole and contends that the Court must exclude the report at trial because it constitutes inadmissible hearsay, is irrelevant to the plaintiff's claims, and is unfairly prejudicial to the employer.

The Court concludes that the SevenFifty Report itself is inadmissible hearsay; however, in order to prove her claim of retaliation, the Court will allow the plaintiff

---

[1] The Plaintiff uses SEVENFIFTY and SevenFifty to describe the report. *Pl.'s Opp'n* at 14-15 ("Nappi also produced notes in discovery that appear to reflect Watson's discussion with Tourangeau about the SEVENFIFTY report . . . ."), ("Plaintiff also intends to introduce the SevenFifty report . . . ."). Nappi uses SevenFifty. *Def.'s Mot.* at 17 ("It is anticipated that the Plaintiff will attempt to offer as evidence what has been referred to in this litigation as a 'SevenFifty Report' . . . ."). The Court does not have a copy of the report and does not know the correct usage. It has used SevenFifty.

to refer to the report and its general conclusions to explain why she contends Nappi retaliated against her.

## I. PROCEDURAL HISTORY

On January 3, 2023, the Court issued a final pretrial order, which set this case for jury selection on February 6, 2023 and for trial from February 27, 2023 through March 3, 2023. *Report of Final Pretrial Conference and Order* at 3 (ECF No. 116) (*Pretrial Order*). In its Pretrial Order, the Court set January 30, 2023 as the date by which any motions in limine must be filed and February 6, 2023 as the date by which any responses must be filed. *Pretrial Order* at 2.

On January 30, 2023, Nappi filed a motion in limine to exclude evidence of the "SevenFifty Report" (ECF No. 124 at 17-19) (*Def.'s Mot.*). On the same day, Ms. Tourangeau filed a motion to request a weeklong extension of the Court's scheduling order as set out in the Pretrial Order. *Mot. to Am. Procedural Order* (ECF No. 129). Over objection, the Court granted Ms. Tourangeau's motion on January 31, 2023 and extended the filing date for motions in limine to February 6, 2023 and for responses to February 13, 2023. *Order* (ECF No. 131).

On the same day, Nappi filed a motion for reconsideration asking the Court to "reconsider its January 31, 2023 Order on the Plaintiff's Motion to Amend Procedural Order" or alternatively "amend the January 31 Order to provide that the Plaintiff will have one week to prepare responses to Nappi's timely filed motions in limine." *Def. Nappi Distributors' Mot. to Reconsider Order on Mot. to Am. Procedural Order* (ECF No. 132) (*Mot. for Recons.*). On February 1, 2023, Ms. Tourangeau replied. *Pl.'s*

*Opp'n to Def.'s Mot. for Recons.* (ECF No. 134). Concluding that "justice would be better served if it had both the Plaintiff's and the Defendant's submissions so that it could make the correct rulings and prepare appropriate jury instructions" and that "the impact on Nappi [and the Court], although real, appeared manageable," the Court denied Nappi's Motion for Reconsideration. *Order Denying Mot. for Recons.* at 9-10 (ECF No. 136).

On February 13, 2023, Ms. Tourangeau filed her response to Nappi Distributors' motion in limine to exclude introduction of the "SevenFifty Report" (ECF No. 154 at 14-15) (*Pl.'s Opp'n*).

The Court's Final Pretrial Order provided that "[n]o replies will be allowed except by motion." *Pretrial Order* at 2. No such motion was filed.

## II. THE PARTIES' POSITIONS

### A. The "SevenFifty Report"

In November, 2018, after learning that her salary may be reduced or eliminated, Ms. Tourangeau requested a report regarding gender-based pay discrepancies in the beverage industry from SevenFifty, an online marketplace and communications platform for the beverage alcohol industry. The report is entitled "2018 Career & Salary Survey Report," (the Report) which she received via email on November 27, 2018. *Def.'s Mot.* at 17. Immediately upon receipt of this email, Ms. Tourangeau forwarded the Report to her supervisor, Mr. Watson, who in turn forwarded it to Director of Human Resources Christine Fox. *Id.*

The Report "purports to be the results of a voluntary survey for alcohol beverage industry employees, which concludes, in part, that based on the respondent pool, women in all roles in the beverage industry are compensated less than men ($66,000 vs. $79,000, on average)." *Id.*  According to Nappi, the Report "clearly states that more information would be required to conclude that women were making less than men *for the same jobs*." *Id.* at 19.

B.   **Nappi's Motion in Limine**

Nappi anticipates that Ms. Tourangeau will attempt to offer the Report in support of one or more of her claims. *Id.* at 17. Nappi specifically anticipates that Ms. Tourangeau will attempt to offer the Report as evidence of a pay disparity between men and women at Nappi—as opposed to the beverage industry as a whole—or offer other facts contained within the Report to support her claims. *Id.* Nappi contends that "the Report and its content must be excluded at trial because it constitutes inadmissible hearsay, is irrelevant to [Ms. Tourangeau]'s claims, and is unfairly prejudicial to Nappi." *Id.*

Nappi contends that the Report "appears to 'highlight' an industry-wide pay disparity between men and women at all levels in the beverage industry [and i]t does not represent the statistics of actual compensation at Nappi," and it was "inconclusive as to whether men and women were paid differently for the same jobs." *Id.* (quoting Report at 29) ("Due to covariance, additional analysis would be needed to discover if women are underpaid for the same jobs as men").

4

Nappi argues first that "it is clear that the Report itself is hearsay, as it contains out-of-court statements offered for the truth of the matters asserted." *Id.* Nappi then argues that "even if an exception to the hearsay rule applied, the Report is not relevant to Ms. Tourangeau's claims." *Id.* at 18. Nappi explains that "because Plaintiff's claim under the Equal Pay Act requires her to prove she earned unequal pay *for equal work* (a conclusion the Report was ultimately unable to draw), the Report does not make any fact of consequence any more or less probable." *Id.*

Nappi concludes that "to the extent the Court finds the Report relevant, any scant relevance is substantially outweighed by the danger of misleading or confusing the jury and unfairly prejudicing Nappi." *Id.* This is so because "[a]llowing the jury to receive and accept as true the conclusions drawn in the Report, conclusions that have not been verified by Plaintiff or any expert retained by the Plaintiff . . . may lead the jury to conclude that just because there is a pay disparity in the beverage industry as a whole across the nation, there is also one at Nappi." *Id.*

### C. Michele Tourangeau's Opposition

In her response, Ms. Tourangeau clarifies that she "does not seek to offer this report as evidence of a pay disparity between men and women at Nappi." *Pl.'s Opp'n* at 14. Instead, Ms. Tourangeau "intends to offer this report, and her communications to [Mr.] Watson, and through [Mr.] Watson to [Ms,] Fox, as evidence of protected activity later resulting in elimination of her salary without being compensated at 3% commission." *Id.*

## III.   DISCUSSION

As Nappi describes it, Ms. Tourangeau learned in early November 2018 during a meeting with Mr. Watson that Nappi was going to reduce or eliminate her salary as part of Nappi's rerouting plan. *Def.'s Mot.* at 17. In response, Ms. Tourangeau obtained a report from SevenFifty, a beverage industry platform, entitled "2018 Career & Salary Survey Report," which suggested that women in all roles in the beverage industry are compensated less than men ($66,000 v. $79,000). *Id*. Ms. Tourangeau forwarded a copy of this report to Mr. Watson as evidence of pay disparity between men and women at Nappi. *Id.*

At this trial, Ms. Tourangeau does not wish to admit the SevenFifty report as evidence of a pay disparity at Nappi but to establish that when Nappi informed her about her pay reduction, she sent the report to her supervisor and she contends that Nappi considered the SevenFifty report in making a decision about her salary. *Pl.'s Opp'n* at 14.

First, the Court observes that neither party has provided the Court with a copy of the SevenFifty 2018 report, so the Court must make assumptions about its contents.

Second, the Court agrees with Nappi that, if the SevenFifty report were offered for its truth, the report itself is inadmissible hearsay. *United States v. Fígaro Benjamín*, 394 F. Supp. 3d 191, 195 (D.P.R. 2019) (quoting FED. R. EVID. 801(c)). The Court is dubious that simply by attaching the report to an email correspondence at work, the Plaintiff made the report a business record of Nappi, and, if the argument

6

could be made, Ms. Tourangeau has not made it. *See* FED. R. EVID. 803(6). In addition, as neither party supplied the report to the Court, the Court is unable to make a Rule 403 analysis; however, based on Nappi's representations about the contents of the report, the Court is doubtful that it would survive a Rule 403 balancing evaluation.

Third, the Court also concludes that reference to the report and its overall findings is likely admissible but with restrictions. As the Court understands Ms. Tourangeau's retaliation claim, she is contending that after she was informed that Nappi was considering reducing or eliminating her salary, she confronted Mr. Watson, her immediate superior, with a copy of the SevenFifty pay disparity report. Following receipt of that report, she contends that Mr. Watson and Nappi itself took into consideration her presentation of the SevenFifty report in deciding to eliminate her base salary by June 27, 2021. Even though the report itself is not admissible, the fact that Ms. Tourangeau presented an industry report that suggested a male-female pay disparity within the beverage industry and presented some specifics about the industry-wide pay disparity is proper evidence from which a jury could conclude that Nappi retaliated against her. Although the details of the report are hearsay, the fact that Ms. Tourangeau presented a report on pay disparity to her superior at Nappi is admissible, not for the truth of the report, but for the fact that Nappi may have considered her actions, including presenting the report, in retaliating against her. In effect, Ms. Tourangeau is claiming that when Nappi received the SevenFifty report,

7

it concluded that she was a troublemaker and this in part motivated it to retaliate against her.

## IV.  CONCLUSION

The Court GRANTS in part and DENIES in part the Defendant's Motion in Limine to Exclude Introduction of the "SevenFifty Report" (ECF No. 124 at 17-19). The Plaintiff will not be allowed to introduce the SevenFifty Report as such, but the Plaintiff will be allowed to reference the report and its overall conclusions in the context of her pay discussions with Nappi and Nappi's response.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 16th day of February, 2023