UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| MICHELE TOURANGEAU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 2:20-cv-00012-JAW |
| NAPPI DISTRIBUTORS, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON PLAINTIFF'S MOTION IN LIMINE REGARDING DISABILITY INSURANCE BENEFITS

In anticipation of trial, the plaintiff files a motion in limine to exclude all evidence of her receipt of disability insurance benefits and her short-term disability leave. The plaintiff contends that the defendant would reap an unjust windfall if the jury were to offset her back pay by the amount of her disability insurance benefits and that this evidence should be excluded pursuant to the "collateral source rule" and Federal Rules of Evidence 401 and 403. The Court finds that the information in the record is too sparse to rule on whether Ms. Tourangeau's short-term disability benefits are subject to the collateral source rule and dismisses the motion without prejudice.

## I.   PROCEDURAL HISTORY

On January 3, 2023, the Court issued a final pretrial order, which set this case for jury selection on February 6, 2023 and for trial from February 27, 2023 through March 3, 2023. *Report of Final Pretrial Conference and Order* at 3 (ECF No. 116) (*Pretrial Order*). In its Pretrial Order, the Court set January 30, 2023 as the date by

which any motions in limine must be filed and February 6, 2023 as the date by which any responses must be filed. *Pretrial Order* at 2.

On January 30, 2023, Ms. Tourangeau filed her motion in limine regarding disability insurance benefits (ECF No. 128) (*Pl.'s Mot.*). On the same day, Ms. Tourangeau filed a motion to request a weeklong extension of the Court's scheduling order as set out in the Pretrial Order. *Mot. to Am. Procedural Order* (ECF No. 129). Over objection, the Court granted Ms. Tourangeau's motion on January 31, 2023 and extended the filing date for additional motions in limine to February 6, 2023 and for responses to February 13, 2023. *Order* (ECF No. 131). On the same day, Nappi filed a motion for reconsideration asking the Court to "reconsider its January 31, 2023 Order on the Plaintiff's Motion to Amend Procedural Order" or alternatively "amend the January 31 Order to provide that the Plaintiff will have one week to prepare responses to Nappi's timely filed motions in limine." *Def. Nappi Distributors' Mot. to Reconsider Order on Mot. to Am. Procedural Order* (ECF No. 132) (*Mot. for Recons.*). On February 1, 2023, Ms. Tourangeau replied. *Pl.'s Opp'n to Def.'s Mot. for Recons.* (ECF No. 134).

Concluding that "justice would be better served if it had both the Plaintiff's and the Defendant's submissions so that it could make the correct rulings and prepare appropriate jury instructions" and that "the impact on Nappi [and the Court], although real, appeared manageable," the Court denied Nappi's Motion for Reconsideration. *Order Denying Mot. for Recons.* at 10 (ECF No. 136).

On February 13, 2023, Nappi filed its response to Ms. Tourangeau's motion in limine regarding disability insurance benefits. *Def. Nappi Distributors' Opp'n to Pl.'s Mots. in Limine* (ECF No. 146) (*Def.'s Opp'n*).

The Court's Final Pretrial Order provided that "[n]o replies will be allowed except by motion." *Pretrial Order* at 2. No such motion was filed.

## II.    THE PARTIES' POSITIONS

### A.    Ms. Tourangeau's Motion in Limine

Ms. Tourangeau explains that she "received short term disability benefits following the birth of her child and for a subsequent medical procedure related to childbirth" and contends that under First Circuit precedent, her "receipt of disability insurance benefits should not reduce her damages in an employment discrimination case." *Pl.'s Mot.* at 1 (collecting cases). Ms. Tourangeau asserts that she "pays the premium for her short-term disability benefits." *Id.* at 1. She urges the Court to exclude this evidence because "[i]f the Court or jury offset Ms. Tourangeau's back pay by the amount of her disability insurance benefits, [Nappi] would unjustly reap a windfall." *Id.* at 2. She further urges the Court to exclude this evidence as irrelevant and unfairly prejudicial to Ms. Tourangeau.

### B.    Nappi Distributors' Opposition

In its response, Nappi contends that its payment of short-term disability benefits is not a collateral source and is otherwise admissible at trial. *Def.'s Opp'n* at 1-5. Nappi explains that Ms. Tourangeau received short-term disability benefits when she left work in 2016 to deliver her child and in 2019 for urethral sling surgery.

*Id.* at 1. Specifically, Nappi says that Ms. Tourangeau was paid "66 2/3% of an average of all commissions and salary she received for the 52-week period immediately preceding the date of disability, subject to a weekly cap of $575.00." *Id.* Nappi represents that while on each leave, Ms. Tourangeau "received the maximum amount of $575 per week in compensation from Nappi." *Id.* Citing deposition testimony and documents, Nappi says that pursuant to its leave policy, Ms. Tourangeau "was not entitled to any additional compensation while receiving wage replacement through short-term disability." *Id.* In further response, Nappi contends that its payment of short-term disability benefits was not a payment from a collateral source, because it — and not a third party such as an insurer — paid the benefits. *Id.* at 2 ("Ms. Tourangeau's receipt of short-term disability compensation while on leave is not from a source independent from Nappi – her compensation came directly from Nappi itself"). Next, to the extent an argument could be made that Ms. Tourangeau's payments were from a collateral source, Nappi says that Ms. Tourangeau has failed to make it, because she did not address the "five-factor inquiry" this district described in *Allen v. Exxon Shipping Co.*, 629 F. Supp. 1545, 1547-48 (D. Me. 1986). Nappi contends that if the Court determined that Nappi's payments were a collateral source, Ms. Tourangeau should be barred from making this claim because she elected to receive short-term disability benefits instead of her salary and commission, when she was out of work. *Def.'s Opp'n* at 3-4. Finally, Nappi says that its payment of short-term disability benefits to Ms. Tourangeau is a defense to her Pregnancy Discrimination Act claim. *Id.* at 4-5.

## III.   DISCUSSION

### A.   The Collateral Source Doctrine

Under the collateral source rule, "a plaintiff who has been compensated in whole or in part for h[er] damages by a source independent of the tortfeasor is nevertheless entitled to a full recovery against the tortfeasor." *Webber v. Int'l Paper Co.*, 307 F. Supp. 2d 119, 124-25 (D. Me. 2004) (quoting *Potvin v. Seven Elms, Inc.*, 628 A.2d 115, 116 (Me. 1993)).  The premise underlying this rule is that "[i]f either the victim of the discrimination or the discriminating employer is going to receive a windfall because part of the victim's loss has been paid for by a third party, it is more just that the windfall should inure to the injured party than to the wrongdoer." *Me. Human Rights Comm'n v. Dep't of Corr.*, 474 A.2d 860, 870 (Me. 1984) (quoting *Olivas v. United States*, 506 F.2d 1158, 1163-64 (9th Cir. 1974)).  "Under the Maine Human Rights Act, there is no judicial discretion to reduce a back pay award by amounts received from a collateral source." *Webber*, 307 F. Supp. at 124-25 (citation omitted).

### B.  An Inadequate Record

Once again, the state of the record is unclear and precludes a definitive answer. Ms. Tourangeau asserts that she paid the premiums for her short-term disability benefits and Nappi states that it was the source of those payments.  Prior precedent in this district has adopted a five-factor inquiry:

> (1) whether the employee makes any contribution to funding of the disability payment; (2) whether the benefit plan arises as the result of a collective bargaining activity; (3) whether the plan and payments thereunder cover both work-related and nonwork-related injuries; (4) whether payments from the plan are contingent upon length of service of the employee; and (5) whether the plan contains any specific language

5

> contemplating a set-off of benefits received under the plan against a
> judgment recovered in a tort action.

*Id.* at 125 (quoting *Allen*, 639 F. Supp. at 1548). A quick review of these factors confirms that the information is not available in this record on many of the factors. The parties disagree on whether Ms. Tourangeau herself paid a premium for short-term disability. The Court suspects, but does not know, that Nappi is not unionized. There is no information as to whether Nappi's short-term disability plan covers both work-related and non-work-related injuries. There is no information about whether payments are contingent upon length of service. There is no information about whether the plan contains language authorizing a set-off of benefits from a tort action.

An example of the required analysis is found in *Webber*. The district court ruled that the fact that the employee was the source of the premium payments "weighs in favor of finding that the benefit was a collateral source." *Id.* at 125. Moreover, in *Webber*, the district court discussed several factors not a matter of record here: (1) whether the disability plan covers both work-related and non-work-related absences, (2) whether the disability plan is a fringe benefit or an indemnification plan, (3) whether payments depend on the length of an employee's service, and (4) whether the disability plan contains set-off language against a judgment rendered in favor of an employee against the employer. *Id.*

Based on the sparse information before the Court, it cannot rule on whether Ms. Tourangeau's short-term disability benefits are subject to the collateral source rule. *See Rooney v. Sprague Energy Corp.*, 519 F. Supp. 2d 110, 124-25 (D. Me. 2007)

6

(concluding that the record in a motion in limine did not contain enough information to apply the five-factor test to determine whether short and long term disability benefits were a collateral source).

## IV.   CONCLUSION

The Court DISMISSES without prejudice the Plaintiff's Motion in Limine Regarding Disability Insurance Benefits (ECF No. 128).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 20th day of February, 2023