UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MICHELE TOURANGEAU, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 2:20-cv-00012-JAW |
| | ) |
| NAPPI DISTRIBUTORS, | ) |
| | ) |
| Defendant. | ) |

**ORDER ON NAPPI DISTRIBUTORS' SUPPLEMENTAL MOTION IN LIMINE**

In anticipation of trial, the defendant filed a motion in limine to redact documents that reveal salary information about its employees and certain proprietary business information. After reviewing First Circuit law on sealing and redaction, the Court has balanced the privacy rights of the third parties and of the family business against the presumption of the right of public access and it has concluded, based on its understanding of the potential evidence, that the trial of this case with redacted names, initials, or pseudonyms will cause substantial confusion among the jurors, the witnesses, and perhaps the attorneys. The Court cannot envision this case being efficiently and effectively tried without revealing names and financial data. However, as the Court is sensitive to the privacy interests of both the third parties and the family business, the Court will allow two sets of records to be presented: one, which will go to the jury and will be referred to in court, will contain only the customary redactions and the other, which will be available to the public, will contain the redactions proposed by the defendant. Although not a perfect

solution, this will lessen the risk that a stranger or competitor could gain access to the private information and use it to cause mischief or to gain an improper competitive advantage.

## I. PROCEDURAL HISTORY

On January 3, 2023, the Court issued a final pretrial order, which set this case for jury selection on February 6, 2023 and for trial from February 27, 2023 through March 3, 2023. *Report of Final Pretrial Conference and Order* at 3 (ECF No. 116) (*Pretrial Order*). In its Pretrial Order, the Court set January 30, 2023 as the date by which any motions in limine must be filed and February 6, 2023 as the date by which any responses must be filed. *Pretrial Order* at 2.

On January 30, 2023, Nappi filed a motion in limine and raised redaction as a possible issue. *Def. Nappi Distributors' Mot. in Limine* (ECF No. 124 at 22-23) (*Def.'s Mot.*). On the same day, Ms. Tourangeau filed a motion to request a weeklong extension of the Court's scheduling order as set out in the Pretrial Order. *Mot. to Am. Procedural Order* (ECF No. 129). Over objection, the Court granted Ms. Tourangeau's motion on January 31, 2023 and extended the filing date for motions in limine to February 6, 2023 and for responses to February 13, 2023. *Order* (ECF No. 131).

On the same day, Nappi filed a motion for reconsideration asking the Court to "reconsider its January 31, 2023 Order on the Plaintiff's Motion to Amend Procedural Order" or alternatively "amend the January 31 Order to provide that the Plaintiff will have one week to prepare responses to Nappi's timely filed motions in limine." *Def. Nappi Distributors' Mot. to Reconsider Order on Mot. to Am. Procedural Order*

(ECF No. 132) (*Mot. for Recons.*).  On February 1, 2023, Ms. Tourangeau replied.  *Pl.'s Opp'n to Def.'s Mot. for Recons.* (ECF No. 134).  Concluding that "justice would be better served if it had both the Plaintiff's and the Defendant's submissions so that it could make the correct rulings and prepare appropriate jury instructions" and that "the impact on Nappi [and the Court], although real, appeared manageable," the Court denied Nappi's Motion for Reconsideration.  *Order Denying Mot. for Recons.* at 10 (ECF No. 136).

On February 8, 2013, Nappi filed a motion for leave to file a supplemental motion in limine concerning the use of redacted documents.  *Def.'s Mot. for Leave to File a Supp. Mot. in Limine* (ECF No. 144) (*Def.'s Mot. for Leave*).  The same day, the Court granted Nappi's motion to file a supplemental motion.  *Order* (ECF No. 145).

On February 13, 2023, Ms. Tourangeau filed her response to Nappi Distributors' motion in limine and addressed Nappi's concerns about redaction.  *Pl.'s Resp. to Def.'s Mots. in Limine* at 16-18 (ECF No. 154) (*Pl.'s Opp'n*).

On February 14, 2023, Nappi filed its supplemental motion.  *Def.'s Supp. Mot. in Limine* (ECF No. 158) (*Def.'s Supp. Mot.*).[1]

## II. THE PARTIES' POSITIONS

### A. Nappi's January 20, 2023 Motion in Limine

---

[1]    On February 8, 2023, Nappi attached its proposed supplemental motion to its motion for leave to file a supplemental motion. *Def.'s Mot. for Leave*, Attach. 1, *Def.'s Supp. Mot. in Limine* at 1-6. Accordingly, when Ms. Tourangeau responded to Nappi's motion on February 13, 2023, she was able to respond to the supplemental motion, even though Nappi had not yet formally filed it.  The Court uses February 8, 2023 as the date of the supplemental motion, even though it was formally filed on February 14, 2023.

3

Nappi prophylactically filed this part of its January 30, 2023 motion in limine, noting that it had not yet received Ms. Tourangeau's trial exhibits and it did not know "whether it was going to be necessary to brief the argument that redacted documents should be used in order to preserve privacy of nonparties and Nappi's critical proprietary information." *Id.* at 22-23. Nappi requested the right to file a supplemental motion, if necessary, once Ms. Tourangeau clarified what documents she intended to offer at trial. *Id.* at 23.

B.  **Nappi's February 8, 2023 Supplemental Motion in Limine**

In its supplemental motion, Nappi moves "to exclude all unredacted documents that identify by name the compensation paid to all wine sales representatives other than the Plaintiff and all unredacted documents that contain sensitive proprietary information containing sales figures for specific Nappi accounts." *Def.'s Supp. Mot.* at 1. Nappi states that "[r]edacted versions of these documents are available or can be made available that will enable the parties to address all claims and defenses in this case without unfairly prejudicing persons who are not parties to this litigation or Nappi." *Id.*

Nappi divides documents into three groups: (1) documents Nappi produced in response to an order of this Court and that it marked as confidential under the Court's confidentiality order; 2) one document Ms. Tourangeau produced entitled February 2015 Sales; and 3) four documents Ms. Tourangeau produced showing detailed sales information by specified account for accounts on Plaintiff's sales route. *Id.* at 1-2. Nappi points out that under First Circuit law, the privacy rights of third parties can

4

limit the presumptive right of access to judicial records. *Id.* at 3 (citing *United States v. Kravetz*, 706 F.3d 47, 62 (1st Cir. 2013)). Nappi warns that "[a]llowing the public to access information relating to third parties may result in embarrassment, reputational harm, and disclosure of personal and identifiable contact information, which will have devastating implications for these individuals and their families." *Id.* Regarding Nappi, as opposed to its employees, Nappi argues that the Court "should exclude unredacted documents that purport to reflect detailed sales information by identified accounts." *Id.* at 4. It worries that "unlimited access to every document revealed in discovery has the potential to impair reputations, ruin personal relationships, and *destroy businesses.*" *Id.* (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048-49 (2d Cir. 1995)) (emphasis in *Def.'s Supp. Mot.*). Finally, Nappi argues that even if unredacted information were deemed probative, its admission would be outweighed by unfair prejudice to Nappi. *Id.* at 5-6.

    **C.    Michele Tourangeau's Opposition**

In her opposition, Ms. Tourangeau first observes that Nappi demands that a list of Nappi wine sale representatives be redacted to exclude their names, sex, date of hire, commission earned, incentives earned, salary earned, and total income. *Pl.'s Opp'n* at 16. She also notes that Nappi seeks "to preclude the introduction of unredacted documents that reflect the names of accounts with sales by sales representative." *Id.* at 16-17. Ms. Tourangeau says that the Court discussed this issue in its March 29, 2021 order. *Id.* at 17 (citing *Order* (ECF No. 36)).

Ms. Tourangeau contends that the "information in these documents is directly relevant to understanding the comparator information with respect to the sex discrimination and Equal Pay Act claims." *Id.* at 17. She argues that the "redacted information is necessary to understanding the nuances of the comparator evidence and it would be difficult to present such evidence to a jury or ask witnesses about it without using the names in unredacted form." *Id.* Ms. Tourangeau also maintains that "merely having account revenues is insufficient because some accounts are inherently more desirable and profitable than others because some are self-generating accounts that are intrinsically more valuable." *Id.*

Finally, Ms. Tourangeau contends that Nappi failed to comply with the Court's earlier order to produce unredacted documentation of the Sales Representative Route Assignments. *Id.* at 17-18.

### III.  LEGAL PRINCIPLES

The seminal case from the First Circuit on the right of public access is *United States v. Kravetz*. In *Kravetz*, the First Circuit explained that there is a right of public access to judicial records, namely "documents relevant to the determination of the litigants' substantive rights." 706 F.3d at 58. Based on the issues the parties are placing before the jury, the documents at issue in this motion fall well within the concept of judicial records as defined by the First Circuit. This is true particularly since Nappi recently clarified that it intends to press the statutory affirmative defenses to the Equal Pay Act claim of seniority, merit, and quality and quantity production. *See Order on Pl.'s Mot. in Limine to Preclude Test. Regarding Affirmative*

6

*Defense to Equal Pay Act Cl. Beyond What was Submitted to the Me. Human Rights Comm'n* (ECF No. 167). Thus, the Court concludes that the unredacted documents are judicial records and subject to a presumption of public access. *Kravetz*, 706 F.3d at 52-54 (discussing the presumptive right of public access).

Concluding that a document is entitled to the presumptive right of public access does not, however, end the discussion. In *Kravtez*, the First Circuit wrote that "[t]hough the public's right of access is vibrant, it is not unfettered. Important countervailing interests can, in given instances, overwhelm the usual presumption and defeat access." *Id.* at 59 (quoting *Siedle v. Putnam Invs.*, 147 F.3d 7, 10 (1st Cir. 1998)). In those circumstances where a court considers whether judicial records to which the presumption of public access applies shall be sealed or redacted, a court "must carefully balance the presumptive public right of access against the competing interests that are at stake in a particular case . . . keeping in mind that 'only the most compelling reasons can justify non-disclosure of judicial records' that come within the scope of the common-law right of access." *Id.* (quoting *In re Providence Journal*, 293 F.3d 1, 10 (1st Cir. 2002) (quoting *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987)).

Two important countervailing policy concerns are implicated in the documents in this case. The first is the privacy rights of third parties and the second is the proprietary rights of a business, particularly a family business. *Id.* at 61-62. The *Kravetz* Court observed that "privacy rights of participants and third parties are among those interests which, in appropriate cases, can limit the presumptive right of

7

access to judicial records." *Id.* at 62 (quoting *Standard Fin. Mgmt.*, 830 F.2d at 411). The First Circuit described third party privacy rights as "a venerable common law exception to the presumption of access." *Id.* (citation omitted).

Similarly, the First Circuit discussed a separate set of exceptions, "the degree to which the subject matter is traditionally considered private rather than public." *Id.* (citation omitted). Significantly, the *Kravetz* Court used as an example of this category the "[f]inancial records of a wholly owned business." *Id.* The First Circuit quoted with approval the Second Circuit's observation that "[c]ommercial competitors seeking an advantage over rivals need not be indulged in the name of monitoring the courts." *Id.* (quoting *Amodeo*, 71 F.3d at 1051). Finally, the First Circuit "note[d] again that redaction remains a viable tool" for balancing these countervailing interests. *Id.* at 63.

## IV. DISCUSSION

None of this is news to the parties. In the runup to the order on motion for summary judgment and after, the Court issued four separate sealing orders. *Order on Mots. to Seal* (ECF No. 70) (*First Sealing Order*); *Order on Mots. to Seal* (ECF No. 78) (*Second Sealing Order*); *Third Order on Mots. to Seal* (ECF No. 91) (*Third Sealing Order*); *Fourth Order on Mots. to Seal* (ECF No. 94) (*Fourth Sealing Order*). Nappi continues to emphasize that it supplied records pursuant to the Court's confidentiality order. *Def.'s Supp. Mot.* at 1 ("[T]here are a series of documents produced by the Defendant in response to an order of the Court that were all stamped confidential under this Court's Confidentiality Order"). To the extent Nappi is

arguing that the confidentiality order controls or should influence this ruling, the Court has repeatedly informed counsel that a confidentiality order affects documents and information exchanged during discovery and the First Circuit distinguishes between public access to discovery materials and to judicial records. *First Sealing Order* at 2-3; *Second Sealing Order* at 1-6; *Third Sealing Order* at 1-20; *Fourth Sealing Order* at 1-8.

The Court accepts both Ms. Tourangeau's contention that the disputed records in this case are subject to a presumption of public access and Nappi's concerns about the privacy rights of its employees and the private nature of its proprietary business interests. To this end, the Court cannot envision a coherent presentation of the evidence in this case to a jury without specific reference to the information Nappi seeks to redact. Here, based on its one-hundred-and forty-three-page order on Nappi's motion for summary judgment, the Court has a sense for the evidence that the parties will present to the jury on the claims and defenses. *See Order on Mot. for Summ. J.* at 1-143 (ECF No. 106). The Court strains to conceive of how the witnesses will testify on both direct and cross-examination without reference to specific employees and to financial figures, specific routes, and customers. For example, based on the spreadsheet attached to Ms. Tourangeau's opposition, references to Female X or Male O will likely cause unending confusion to the witnesses, the jury, and perhaps even the attorneys. *See Pl.'s Opp'n*, Attach. 4, *Spreadsheet*. During the trial, the Court will not restrict references by attorneys or witnesses to actual names

9

and salaries of employees associated with different routes or to actual names and sales figures of Nappi customers.

At the same time, the Court acknowledges Nappi's concern that the public and its competitors not have ready access to private personal and business information. Accordingly, the Court will allow two sets of documents: one unredacted set to be used during testimony, referred to by the attorneys, and sent to the jury room and a separate, redacted set of documents available on the public record.

This will minimize, but not eliminate, Nappi's legitimate concern about the misuse of this private information to embarrass individuals or to improperly gain a competitive advantage. Even within the records to be submitted to the jury, the Court GRANTS the motion to the extent it requests redaction of the witnesses or employees' home addresses, the names and ages of family members, including children, dates of birth, social security numbers, and similar identifying information. To the extent counsel have specific questions, they are free to return to the Court for guidance.

## V.    CONCLUSION

The Court DENIES in part and GRANTS in part Defendant Nappi Distributors' Motion in Limine (ECF No. 124) and Defendant's Supplementary Motion in Limine (ECF No. 158). The Court DENIES the motion in all respects except that the Court GRANTS the motion to allow Nappi Distributors to substitute redacted documents on the public records to protect the privacy rights of its employees and customers.

10

SO ORDERED.

                                                    <u>/s/ John A. Woodcock, Jr.</u>
                                                    JOHN A. WOODCOCK, JR.
                                                    UNITED STATES DISTRICT JUDGE

Dated this 22nd day of February, 2023