UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MICHELE TOURANGEAU, ) ) Plaintiff, ) ) v. ) ) NAPPI DISTRIBUTORS, ) ) Defendant. ) | No. 2:20-cv-00012-JAW |

**ORDER ON PLAINTIFF'S MOTION FOR EQUITABLE RELIEF**

After a five-day jury trial ending in a defense verdict, an employee-plaintiff brings a motion for equitable relief in which she asks the Court to disregard the jury's advisory verdict and grant equitable relief under the theories of quantum meruit and unjust enrichment. The Court denies the plaintiff's motion as to quantum meruit because a quantum meruit claim is rightly decided by a jury. The Court denies the plaintiff's motion as to unjust enrichment because the Court's assessment of the evidence presented at trial coincides with the advisory jury verdict that Ms. Tourangeau did not meet her burden of proof on her unjust enrichment claim.

**I.  BACKGROUND**

**A.  Procedural History**

On January 10, 2020, Michele Tourangeau filed a lawsuit in this Court against her employer, Nappi Distributors (Nappi), alleging unequal pay practices and related retaliation, sex and pregnancy discrimination, and sexual harassment. *Pl.'s Compl. and Demand for Jury Trial* (ECF No. 1) (*Compl.*). Ms. Tourangeau proceeded to trial

against Nappi on six legal claims: one, that Nappi violated the Equal Pay Act by paying Ms. Tourangeau less than similarly situated male employees; two, that Nappi discriminated against Ms. Tourangeau on the basis of sex and pregnancy under Title VII; three, that Nappi retaliated against her for engaging in protected activity under the Maine Human Rights Act, the Equal Pay Act (EPA), and Title VII; four, that Nappi violated Maine's Timely and Full Payment of Wages Law by failing to pay timely wages owed to Ms. Tourangeau; five, that Nappi failed to pay Ms. Tourangeau for work performed, and Nappi, therefore, owes her for expenses for which she reasonably believed she would be compensated; and six, that Nappi failed to pay Ms. Tourangeau for work performed, and therefore Nappi unjustly benefitted from her work under the theories of quantum meruit and unjust enrichment. *Compl.* ¶ 1. The case was tried before a jury from February 27, 2023 to March 3, 2023, and on March 3, 2023, the jury issued a verdict in favor of Nappi on all submitted claims. *Special Verdict Form* (ECF No. 204) (*Verdict Form*).

On April 3, 2023, Ms. Tourangeau filed a motion for equitable relief. *Pl.'s Mot. for Equitable Relief* (ECF No. 215). On April 24, 2023, Nappi objected. *Def. Nappi Distributors' Opp'n to Pl.'s Mot. for Equitable Relief* (ECF No. 221) (*Def.'s Opp'n*). On May 15, 2023, Ms. Tourangeau replied. *Pl.'s Reply to Def.'s Response in Opp'n to Pl.'s Mot. for Equitable Relief* (ECF No. 230) (*Pl.'s Reply*).

## II. THE PARTIES' POSITIONS

### A. Michele Tourangeau's Motion

Ms. Tourangeau "moves for equitable relief in the form of damages for unjust enrichment and quantum meruit." *Pl.'s Mot.* at 1. She submits that these claims "were to be ultimately decided by the Court rather than submitted to the jury," and she therefore "requests that the Court enter judgment in her favor and against Nappi Distributors on both equitable claims, regardless of the jury's verdict." *Id.* She further submits that "[a] jury's advisory verdict is just that—advisory—and the Court has no obligation to follow it," so it is "within the Court's discretion, not the jury's, to determine equitable relief and remedies." *Id.*

### B. Nappi's Response

#### 1. Quantum Meruit Claim

Nappi first submits that the "Court must deny [Ms.] Tourangeau's request for 'equitable relief' with regard to her claim of quantum meruit" because "[c]ontrary to [Ms.] Tourangeau's suggestion, quantum meruit is a legal claim, not an equitable one." *Def.'s Opp'n.* at 4. According to Nappi, "resolution of that claim was the exclusive province of the jury." *Id.* at 4-5. Nappi further submits that "[a]s the jury found, the plaintiff failed to prove by a preponderance of the evidence that she was entitled to relief under a theory of quantum meruit." *Id.* at 4. Nappi contends that Ms. Tourangeau "has neither argued nor demonstrated that the jury's verdict in that regard was unsupported by record evidence . . . [n]or, based on the evidence . . . could she make such an argument." *Id.* at 5.

#### 2. Unjust Enrichment Claim

Nappi submits that "[a]s the jury found, the plaintiff failed to prove by a preponderance of the evidence that she was entitled to relief under unjust enrichment theory." *Id.* at 6. Nappi explains that "[t]he jury found [Ms.] Tourangeau had not proven by a preponderance of the evidence one or more of the following: one, that she conferred a benefit on Nappi; two, that Nappi had appreciation or knowledge of that benefit; or three, that the acceptance or retention of that benefit was under circumstances as to make it inequitable for Nappi to retain it without payment of its value." *Id.* According to Nappi, "[b]ased on the evidence at trial . . . there was ample evidence to support the jury's finding with regard to all three," and the Court "should reach the same conclusion." *Id.*

Nappi argues that "since [Ms.] Tourangeau is seeking payment of compensation for alleged activities that were the same as those she had agreed to perform under an employment agreement with Nappi, she cannot recover under a theory of unjust enrichment." *Id.* According to Nappi, "[g]iven the employment agreement between the parties, [Ms.] Tourangeau cannot rely on unjust enrichment to recover salary, commissions, and incentives for work she claims to have done." *Id.* at 6-7. Nappi then contends that "given the legal remedies available to [Ms.] Tourangeau to recover the salary, commissions, and incentives she seeks—remedies she invoked but failed to prove—she is precluded from recovering under unjust enrichment." *Id.* at 7. Finally, Nappi contends that Ms. Tourangeau "has not demonstrated it is more likely than not that she conferred a benefit on Nappi that,

4

on the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay." *Id.*

### C. Michele Tourangeau's Reply

In Ms. Tourangeau's reply, she summarizes the services she allegedly performed and for which she contends the Court should grant her equitable relief. Ms. Tourangeau states that during her maternity leave, she "performed services for Nappi with Nappi's knowledge and Nappi's retention of the benefits." *Pl.'s Reply* at 1. She recounts that "Mike Hale testified that he came to an agreement with [Ms.] Tourangeau that if she stayed in touch with Afton Hawkins and her accounts during her maternity leave that Nappi would pay her the incentives for while she was out," but that "Nappi did not pay [her] the incentives from her maternity leave." *Id.* at 1-2. According to Ms. Tourangeau, she "testified that she had several conversations with [Mr.] Hale regarding her maternity leave and he thought it would be beneficial . . . if she were willing to stay connected during her maternity," so she "met with [Ms.] Hawkins weekly if not more and texted often," but received only "43% of the incentive payment," meaning that she "did not receive $2,279.95 and $970.30 in incentive payments." *Id.* at 2.

## III. DISCUSSION

### A. Quantum Meruit Claim

Under Maine law, quantum meruit is a legal claim. *Cummings v. Bean*, 2004 ME 93, ¶ 11, 853 A.2d 221 (holding that "quantum meruit is a legal claim for monetary damages"). Therefore, resolution of a quantum meruit claim is the

5

exclusive province of the jury. *See Bowden v. Grindle*, 651 A.2d 347, 351 (Me. 1994) ("*Quantum meruit* was the common law count for work and labor in an action of *assumpsit*, and, thus, in Maine it is necessarily an issue triable of right by a jury") (citation omitted). The Court concludes that consistent with Maine law, a jury has issued a verdict on the quantum meruit claim and the Court cannot act as a factfinder and grant equitable relief to Ms. Tourangeau for her claim of quantum meruit.

### B. Unjust Enrichment Claim

#### 1. Legal Standard

"[U]njust enrichment is an equitable claim upon which there is no jury trial right." *Sunshine v. Brett*, 2014 ME 146, ¶ 22, n. 11, 106 A.3d 1123, (Alexander, J. dissent) (citing *Bowden,* 651 A.2d at 350); *Cummings*, 2004 ME 93, ¶ 9. Nevertheless, the Court may submit a claim for unjust enrichment to the jury for an advisory verdict. FED. R. CIV. P. 39(c)(1) ("In an action not triable of right by a jury, the court, on motion or on its own: may try any issue with an advisory jury"); *see Momenta Pharms., Inc. v. Amphastar Pharms., Inc.*, 255 F. Supp. 3d 279 (D. Mass. 2017) ("Courts have availed themselves of advisory jury verdicts on equitable defenses when such evidence overlaps with jury questions") (citing *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1020 (Fed. Cir. 2008)). A court is not obliged to follow a jury's advisory verdict. *See, e.g., McPadden v. Wal-Mart Stores East, L.P.*, 2017 U.S. Dist. LEXIS 1446 at \*15 (D.N.H. Jan. 5, 2017) ("[N]either counsel's perceptions or expectations, nor the form of the judgment entered on the verdict can serve to convert an advisory verdict into a binding one"). It is ultimately within the court's

6

discretion, not the jury's, to determine equitable relief and remedies. *Lussier v. Runyon,* 50 F.3d 1103, 1108 (1st Cir. 1995) (collecting cases). As an advisory verdict, the Court is not bound by the jury determination. *Bowden*, 651 A.2d at 351 ("Because the parties agreed that all the equitable actions would be tried by an advisory jury, the Superior Court erred when it considered itself bound by the jury's verdicts on the questions that encompassed this equitable claim").

To sustain a claim for unjust enrichment, a claimant must establish "that it conferred a benefit on the other party . . . that the other party had 'appreciation or knowledge of the benefit' . . . and . . . that the acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value.'" *Forrest Assocs. v. Passamaquoddy Tribe*, 2000 ME 15, ¶ 14, 760 A/2d 1041 (quoting *Howard & Bowie v. Cloutier & Briggs*, 2000 ME 148, ¶ 13, 759 A.2d 707) (quoting *June Roberts Agency, Inc. v. Venture Props.*, 676 A.2d 46, 49 (Me. 1996)). "Unjust enrichment, therefore, permits recovery 'for the value of the benefit retained when there is no contractual relationship, but when, on the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay . . . .'" *Id.* ¶ 14 (quoting *Paffhausen v. Balano,* 1998 ME 47, ¶ 6, 708 A.2d 269, 271).

2. **The Evidence**

Ms. Tourangeau claims that Nappi owed her unpaid wages because she worked without pay during her maternity leave.[1] *Pl.'s Reply* at 1. Ms. Tourangeau asserted

---

[1] In her motion for equitable relief, Ms. Tourangeau asked that the Court delay ruling on the motion for equitable relief for thirty days after the Court ruled on her motion for new trial. *Pl.'s Mot.* at 2. As the Court understands the reason for the requested delay, it is that if the Court ruled in favor of Ms. Tourangeau on the merits of her motion for new trial, it would not have to reach the motion for

7

at trial that she had an agreement with Mike Hale to be paid certain incentives while she was out on maternity leave. *Tr. of Proceedings* at 32:16-34:10 (ECF No. 208-12) (*Trial Tr.*), In her reply, Ms. Tourangeau quotes the testimony of Mike Hale:

> I wanted that route taken care of as best we possibly could. And so I said as long as you stay attached on the phone with your customers in person, taking phone calls from them, they're working with Afton on a daily basis, that I would try and get her the placement incentives on that route while she was out. I had made an agreement with her that that is what I would do if she did her part.

*Pl.'s Reply* at 2 (quoting *Trial Tr.* 372:10-16). She stresses that during her maternity leave, she "met with Afton Hawkins weekly if not more and texted often" and received "43% of the incentive payment." *Id.* She claims she did not receive "$2,279.95 and $970.30 in incentive payments." *Id.*

At trial, Nappi presented evidence to show that it arranged coverage for Ms. Tourangeau's route during her maternity leave, *Trial Tr.* at 446:10-447:1, and that Ms. Tourangeau did not meet with clients, deliver product, or place orders while she was out. *Id.* at 444:5-18. At trial, Ms. Tourangeau conceded that no one at Nappi told her she had to work during her leaves in 2016 and 2019. *Id.* at 444:19-22. In addition, Nappi presented evidence to show that Ms. Tourangeau received wage replacement benefits in lieu of her regular compensation during her leave. *Id.* at 438:22-439:5. Nappi likewise presented evidence that when a Nappi employee elects to take short-term disability and receives short-term disability benefits during that

---

equitable relief. *Id.* However, contemporaneous with this order, the Court is issuing an order denying Ms. Tourangeau's motion for new trial. Accordingly, the Court is now issuing this order since the motion for equitable relief has been fully briefed and there is no reason for further delay.

leave, the employee is not eligible for his or her regular compensation. *Id.* at 777:7-10; 781:15-24.

### 3. Analysis

After a five-day trial, the jury found that Ms. Tourangeau failed to meet her burden of proving by a preponderance of the evidence her claim for unjust enrichment. *Verdict Form* at 3-4. The jury likewise found on the overlapping monetary claims of quantum meruit and Maine's Timely and Full Payment of Wages Law that Ms. Tourangeau failed to meet her burden of proof to demonstrate that Nappi owed her any wages for work performed. Ms. Tourangeau relied in large part on the same evidence to support each of these three claims. *Pl.'s Trial Br.* at 7-8 (ECF No. 137). Taking into account the advisory verdict, but cognizant that it must make its own determination on the unjust enrichment claim, the Court concludes that Ms. Tourangeau has failed to prove her unjust enrichment claim by a preponderance of the evidence.

Based on the extensive evidence presented at trial and outlined briefly above, the Court concludes that Nappi either did not retain a benefit from Ms. Tourangeau in the absence of a contractual relationship or that the grounds of fairness and justice do not compel performance of a legal and moral duty to pay. *See A.F.A.B., Inc. v. Town of Old Orchard Beach*, 639 A.2d 103, 105 n.3 (Me. 1994) ("Unjust enrichment describes recovery for the value of the benefit retained when there is no contractual relationship, but when, on the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay") (citation omitted).

The Court finds that Ms. Tourangeau's work activity during her maternity leave was de minimis and was limited to occasional contact with her temporary replacement, Afton Hawkins. The Court agrees with Nappi that there is no evidence that Ms. Tourangeau met with clients, delivered product, or took orders while she was out on leave. Moreover, the Court also agrees with Nappi that the evidence demonstrates that Ms. Tourangeau accepted wage replacement benefits in lieu of regular compensation during her leave and that those wage replacement benefits fairly and equitably compensated Ms. Tourangeau for her occasional employment contacts. Finally, to the extent Ms. Tourangeau is claiming that she had an agreement with Mike Hale to be paid for work during maternity leave, the Court views that agreement, to the extent it existed and was satisfied, as more properly a quantum meruit quasi-contract claim, and, to the extent it fits under the unjust enrichment rubric, the Court does not conclude that this amorphous and contested agreement compels performance of a legal and moral duty on the part of Nappi to pay Ms. Tourangeau while she was on leave.

## IV.  CONCLUSION

The Court DENIES Michele Tourangeau's Motion for Equitable Relief (ECF No. 230).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 18th day of July, 2023